NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0710-13T4


RIGOBERTO MEJIA,

     Appellant,

v.

NEW JERSEY DEPARTMENT OF
CORRECTIONS,

     Respondent.

_____

APPROVED FOR PUBLICATION

August 11, 2016

APPELLATE DIVISION

Argued June 16, 2016 — Decided August 11, 2016

Before Judges Fuentes, Koblitz and Gilson.

On appeal from the New Jersey Department of Corrections.

Alexander Shalom argued the cause for appellant (American Civil Liberties Union of New Jersey Foundation, attorneys; Mr. Shalom, Edward Barocas, Jeanne LoCicero, and Rebecca Livengood, on the brief; Rigoberto Mejia, on the pro se brief).

Joseph Micheletti, Assistant Chief Deputy Attorney General, argued the cause for respondent (Robert Lougy, Acting Attorney General, attorney; Lisa A. Puglisi, Assistant Attorney General, of counsel; Dianne M. Moratti, Deputy Attorney General, and Alex J. Zowin, Deputy Attorney General, on the briefs).

The opinion of the court was delivered by

KOBLITZ, J.A.D.

In this prison disciplinary appeal, Rigoberto Mejia argues that the sanction of three and one-half years in administrative segregation was improper. Mejia is a prisoner at New Jersey State Prison currently serving a sentence with a mandatory minimum of forty years imposed in 1995 for murder and associated crimes. Mejia was originally sentenced to death for the shooting of another undocumented worker over $750 in December 1991.[1] Mejia, who is now fifty-seven years old and whose first eligibility for parole is in 2031, appeals from an August 8, 2013 disciplinary action taken against him by the New Jersey

---

[1] In State v. Mejia, 141 N.J. 475, 485-86 (1995), our Supreme Court reversed Mejia's death penalty sentence, holding jury instructions were required, in the guilt phase, on the ultimate outcome of a conviction of murder with the intent to kill—capital murder—versus murder with the intent to cause serious bodily injury—which is not death-eligible. The Court held the instruction should advise the jury that it could return a non-unanimous guilty verdict as to the mental state of a defendant who the jury unanimously found had committed a homicide. Id. at 486. If the jury was not unanimous as to the mens rea, the defendant would then not be eligible for the death penalty. Ibid. The holding in Mejia was no longer authoritative following the 1992 New Jersey constitutional amendment. See State v. Cooper, 151 N.J. 326, 376-77 (1997), cert. denied, 528 U.S. 1084, 120 S. Ct. 809, 145 L. Ed. 2d 681 (2000). The Legislature later repealed the death penalty in 2007. See State v. Troxell, 434 N.J. Super. 502, 510 (App. Div.) (explaining the legislative action), certif. denied, 221 N.J. 285 (2014).

A-0710-13T4

Department of Corrections (DOC).[2]  We reverse the sanction imposed because it was arbitrary and unreasonable.

On July 15, 2013, Mejia threw a bucket of hot water, urine and feces on a corrections officer who was walking by his cell. The substance also made contact with another corrections officer who was below Mejia's cell.  Mejia claimed he had done so because he was fearful that the "officer wanted to jump him."

A five-man extraction team was called to remove Mejia from his cell.  Initially, officers were unable to enter the cell because Mejia had tied a bedsheet to the door, which had to be cut by the responding officers.  Officers also utilized "OC spray," a chemical agent, to subdue Mejia before finally extracting him.

Mejia was charged with several asterisk offenses:[3] 1) two counts of *.012, "throwing bodily fluid at any person or otherwise purposely subjecting such person to contact with a bodily fluid"; 2) *.154, "tampering with or blocking any locking device"; and 3) *.306, "conduct which disrupts or interferes with the security or orderly running of the correctional

---

[2] We hereby grant the DOC's June 14, 2016 motion to supplement the record with certifications and documents relating to Mejia's mental health screening.

[3] Asterisk offenses "are considered the most serious and result in the most severe sanctions."  N.J.A.C. 10A:4-4.1(a); see N.J.A.C. 10A:4-5.1(a) (providing the schedule of sanctions for asterisk offenses).

facility." See N.J.A.C. 10A:4-4.1(a). At the administrative hearing, Mejia pled guilty to one charge of throwing bodily fluid on a person, and not guilty on the remaining charges. Although Mejia waived counsel substitute, according to the hearing officer's adjudication Form 259-A, a counsel substitute was present for "translation purposes." Following the hearing, Mejia was adjudicated guilty on all four charges.

The hearing officer sanctioned Mejia to the maximum period of administrative segregation[4] on each charge, all consecutive to each other. On the first bodily fluid charge, Mejia received fifteen days of disciplinary detention, 365 days loss of commutation time, 365 days of administrative segregation, and 90 days loss of television, phone and radio privileges. On the

---

[4] The DOC argues "solitary confinement" does not exist in the New Jersey state penal system and did not exist at the time Mejia was sanctioned. "Administrative segregation" is defined as "removal of an inmate from the general population of a correctional facility to a close custody unit because of one or more disciplinary infractions or other administrative considerations." N.J.A.C. 10A:1-2.2. The DOC contends administrative segregation is not solitary confinement because inmates have access to several services, including "five hours of recreation outside of [their] cell each week" and regular reviews by the mental health staff through the locked cell door. Mejia's mental health records reflect he attended one group session for stress management while housed on administrative segregation for more than two-and-one-half years. "Disciplinary detention" is the "removal of an inmate from the general population to a short-term close custody unit because of a disciplinary infraction(s)." Ibid. We were informed at oral argument that during disciplinary detention an inmate has no access to group sessions, recreation or privileges.

second bodily fluid charge, Mejia received fifteen days of disciplinary detention, 365 days loss of commutation time, 365 days administrative segregation, and 30 days loss of recreation privileges. On the tampering with a locking device charge, Mejia received time served in disciplinary detention, 180 days loss of commutation time, 180 days of administrative segregation, and 30 days loss of recreation privileges. Finally, for the conduct that disrupts charge Mejia received time served in disciplinary detention and 365 days of administrative segregation. The hearing officer ran all of the sanctions consecutively, other than the disciplinary detention sanctions. Mejia's sanctions totaled 30 days of disciplinary detention; 910 days loss of commutation time; 90 days loss of television, phone and radio privileges; 60 days loss of recreation privileges; and 1275 days of administrative segregation.

Under the "reasons for sanctions" portion of the adjudication form, the hearing officer noted Mejia "must be held responsible for his actions," the behavior was "disgusting," and it had caused the corrections officers to seek medical attention. Although the two officers were medically examined, the record contains no evidence of any injuries to either of them due to this incident.

On July 22, 2013, Mejia filed an administrative appeal of the disciplinary decision written in Spanish. Within three weeks, the Assistant Superintendent of New Jersey State Prison upheld the decisions regarding both the adjudication and the sanctions in general language without directly addressing any issue raised. In the "explanation" portion of the form, the Assistant Superintendent stated: "My review of this issue reveals that there was compliance with the New Jersey Administrative Code on inmate discipline, which prescribes procedural safeguards, and the charge was adjudicated accordingly. The preponderance of evidence presented supports the decision of the Hearing Officer and the sanction rendered is appropriate. There appears to be no violation of standards."

In October 2013, Mejia filed an appeal to this court. Six months later, the DOC filed a successful motion for a remand to reconsider Mejia's administrative appeal after its translation into English. On June 6, 2014, after the appeal was translated, the Office of the Administrator for New Jersey State Prison again upheld the hearing officer's decision, this time rejecting the specific arguments raised by Mejia almost a year earlier.[5]

---

[5] Mejia argued that, contrary to the hearing officer's report, he asked for a staff member legal representative at the hearing, and told the hearing officer that he had only seven years of schooling and did not understand English well. He stated the
(continued)

In his pro se appeal to this court Mejia argued he had mental health needs and had not received the mental health screening required by N.J.A.C. 10A:4-9.5(c)(2), which requires that a list of inmates with a pending disciplinary infraction be forwarded to the "Mental Health Unit for a determination as to which inmates should be considered special needs inmates." The DOC responded to this issue in its initial brief in one paragraph, stating "there is no evidence of mental health issues and Mejia is not a special needs inmate," citing to notations by the hearing officer on DOC forms stating "no evid. of MH [(mental health)]." We sua sponte ordered the American Civil Liberties Union, with its consent, to represent Mejia on appeal and file a supplemental brief on his behalf.

In response to Mejia's supplemental brief raising the argument that he suffered from mental illness and was particularly vulnerable to the negative effects of long-term solitary confinement in administrative segregation, the DOC for the first time revealed Mejia had been screened for mental health issues and was routinely reviewed, albeit in a cursory fashion, pursuant to the settlement of a federal case in 1999. See D.M. v. Terhune, 67 F. Supp. 2d 401, 403-05 (D.N.J. 1999).

(continued)
inmate interpreter was only available at the end of the hearing, and he was denied the material and time to prepare.

The DOC further informed us at oral argument that, pursuant to an August 14, 2015 "Request for Rule Exemption"[6] (Rule Exemption), Mejia had been returned to the general population housing at an unknown date prior to oral argument, but after February 8, 2016, when the records reflect he remained in administrative segregation. The Rule Exemption, submitted to us after oral argument, eliminated disciplinary detention and limited administrative segregation "for multiple offenses imposed as a result of the same incident" to 365 days. The Rule Exemption also states:

> Studies have shown that isolation, under certain circumstances, exacerbates mental health deterioration. As such, the elimination of [disciplinary] detention, and the immediate transport of an inmate to a less restrictive administrative segregation unit upon adjudication, will have a positive impact on the inmate population.
>
> Similarly, maximizing inmate exposure to no more than 365 days of administrative segregation per incident, rather than per infraction, will decrease the likelihood of isolation.

---

[6] N.J.A.C. 10A:1-2.4 authorizes the Commissioner to "relax and exempt rules and regulations for the administration of correctional facilities . . . within the Department of Corrections" to avoid "undue hardship, unfairness or injustice." Although the DOC provided a document titled "Request for Rule Exemption," and counsel stated at oral argument that a Rule Exemption had been applied to Mejia, we were not supplied with any official document designated as an approval of this request.

The Rule Exemption attachments include "a replacement list of prohibited acts found in N.J.A.C. 10A:4-4.1(a)" separating "the original list into the 5 new Categories from the Rule Exemption" including "the applicable number of days of Administrative Segregation per category." The sanction range for *.012, "Throwing bodily fluid at any person," is 181 to 365 days. The other two infractions for which Mejia was convicted carry a sanction range of 91 to 180 days. Thus, the infraction of *.306, "conduct which disrupts or interferes with the security or orderly running of the correctional facility," has been downgraded to an infraction carrying a possible sanction of no more than 180 days in administrative segregation rather than the 365 days Mejia received.

The scope of our review of an agency decision is limited. Capital Health Sys., Inc. v. N.J. Dep't of Banking & Ins., ___ N.J. Super. ___, ___ (App. Div. 2016) (slip op. at 14). "Ordinarily, an appellate court will reverse the decision of the administrative agency only if it is arbitrary, capricious or unreasonable or it is not supported by substantial credible evidence in the record as a whole." Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980). "Normally, when reviewing agency decisions, we defer to matters that lie within the special competence of an administrative tribunal." Balagun v.

N.J. Dep't of Corr., 361 N.J. Super. 199, 202 (App. Div. 2003). "[S]uch deference is appropriate because it recognizes that 'agencies have the specialized expertise necessary to enact regulations dealing with technical matters and are "particularly well equipped to read . . . and to evaluate the factual and technical issues that . . . rulemaking would invite."'" N.J. Soc'y for Prevention of Cruelty to Animals v. N.J. Dep't of Agric., 196 N.J. 366, 385 (2008) (quoting In re Freshwater Wetlands Prot. Act Rules, 180 N.J. 478, 489 (2004)). "Our role is to engage in a 'careful and principled consideration of the agency record and findings.'" DeCamp v. N.J. Dep't of Corr., 386 N.J. Super. 631, 636 (App. Div. 2006) (quoting Williams v. Dep't of Corr., 330 N.J. Super. 197, 204 (App. Div. 2000)). "[A]lthough the scope of review of an agency's decision is circumscribed, an appellate court's review of an agency decision is 'not simply a pro forma exercise in which [the court] rubber stamp[s] findings that are not reasonably supported by the evidence.'" In re Taylor, 158 N.J. 644, 657 (1999) (second and third alterations in original) (quoting Chou v. Rutgers, 283 N.J. Super. 524, 539 (App. Div. 1995), certif. denied, 145 N.J. 374 (1996)).

Mejia argues his appeal of administrative segregation is not moot[7] because, should he be convicted of any further infraction, the severity of his prior sanction will be considered when imposing punishment. This argument raises the question of what criteria are used in imposing sanctions. N.J.A.C. 10A:4-9.17, titled "Disciplinary sanctions," provides in pertinent part:

> (a) The disciplinary action <u>may be individualized</u> by considering <u>such factors as</u> the:
>
> 1. Offender's past history of correctional facility adjustment;
>
> 2. Setting and circumstances of the prohibited behavior;
>
> 3. Involved inmate's account;
>
> 4. Correctional goals set for the inmate; and
>
> 5. The inmate's history of, or the presence of, mental illness.
>
> [(Emphasis added).]

The DOC also provided us with a copy of an "internal policy" statement, ADM.008.000, titled "Inmate Disciplinary Hearing Program: Mission, Goals and Objectives," revised on April 28,

---

[7] The DOC has not raised the question of mootness. Even if the issue were moot, we would address it because of its importance. See Joye v. Hunterdon Cent. Reg'l High Sch. Bd. of Educ., 176 N.J. 568, 583 (2003) (resolving a moot issue because of its public significance and likelihood to reoccur).

2011, and reviewed in September 2015, which states "[t]he mission of the Inmate Disciplinary Hearing Program is to ensure that . . . all inmate disciplinary hearings are conducted fairly and impartially . . . ." One of the "Goals and Objectives" is "[t]o ensure fair and equitable sanctioning of inmates . . . ." To accomplish those ends, "monthly reports containing a statistical breakdown of infractions, comments, and recommendations are generated, analyzed, and distributed to appropriate administrative staff." The DOC has provided no information stating hearing officers are <u>required</u> to impose sanctions based on the factors set forth in <u>N.J.A.C.</u> 10A:4-9.17(a), or any other delineated factors.

Mejia was given the longest possible period of administrative segregation available at the time based on the articulated reasons that his behavior was "disgusting," he "must be held responsible for his actions," and corrections officers had been medically examined. Mejia was convicted of two counts of throwing bodily fluids on another person, which is arguably "disgusting" in any of its manifestations. <u>See</u> <u>State v. Fuentes</u>, 217 <u>N.J.</u> 57, 74-75 (2014) (holding "a sentencing court must scrupulously avoid 'double-counting' facts that establish the elements of the relevant offense"). All inmates should be held accountable for their actions, and the fact that the

officers hit by Mejia's bodily fluids were examined medically does not in itself reflect any injury to either of them. A bedrock principle of fair punishment is that it be meted out the same to individuals similarly situated. State v. Moran, 202 N.J. 311, 326 (2010) (stating our Supreme Court "often has taken affirmative steps to ensure that sentencing and disposition procedures, whether authorized by statute or court rule, will not produce widely disparate results for similarly situated defendants").

Our criminal statutes provide aggravating and mitigating factors that must be considered and articulated on the record prior to sentencing. N.J.S.A. 2C:44-1; see Fuentes, supra, 217 N.J. at 73; see also State v. Case, 220 N.J. 49, 54 (2014) (stating that "[c]entral to the success of" the sentencing "process is the requirement that the judge articulate the reasons for imposing sentence"). The DOC regulations include factors to be utilized in imposing sanctions, but unfortunately leave the use of those or other "such factors" entirely to the discretion of the hearing officer. See N.J.A.C. 10A:4-9.17(a). The hearing officer adjudication form has a section for the purpose of stating the reasons for the sanction. Prior to the translation of Mejia's appeal, the DOC's generic affirmance acknowledged the sanction imposed must be equitable, stating,

"the sanction rendered is appropriate." For a sentence to be "appropriate," it is not enough that the sentence be within the maximum limits set forth in the Administrative Code. With such totally discretionary sanctioning factors, a hearing officer is not guided to distinguish among inmates convicted of the same infraction, as evidenced by the articulated reasons for the maximum period of isolation imposed on Mejia. Without any regulation requiring the articulation of sanctioning factors, we have no way to review whether a sanction is imposed for permissible reasons and is located at an appropriate point within the allowable range. See In re Issuance of Permit by Dep't of Envtl. Prot., 120 N.J. 164, 172-73 (1990) (stating an administrative agency that is performing a quasi-judicial function is obligated to set forth basic findings of facts supporting the ultimate conclusion so the reviewing tribunal may sufficiently review whether the actions were arbitrary and capricious, and whether they were within the agency's scope of authority); see also Bailey v. Bd. of Review, 339 N.J. Super. 29, 33 (App. Div. 2001) (stating this court should not defer to an administrative determination unless it has "confidence that there has been a careful consideration of the facts in issue and appropriate findings addressing the critical issues in dispute").

We therefore reverse the sanctions imposed for Mejia's commission of various infractions in a single incident. Under current rules Mejia could not have been sanctioned to more than a total of 365 days of administrative segregation. He could not have received any time in disciplinary detention. He has thus served more than the maximum sanction presently available. We reverse the penalties imposed on Mejia, but affirm his guilt.

Mejia raises two other issues in his appeal: the quality of the mental health screening and mental health services he has been provided in prison, and the related issue of whether an interpreter was provided to him to allow him to take advantage of the mental health services otherwise available.[8] The record

---

[8] Following oral argument, the DOC provided us with a document titled "Health Services Unit Internal Management Procedures" specific to "Privacy of Care" that states: "For inmates with special communication needs staff will obtain permission from the inmate for use of an interpreter or telephonic translation service and arrange for such services." Mejia's actual mental health records reflect he was provided an interpreter for a mental health check-up on May 6, 2016, but had not been provided one for psychological check-ups previously. In April 2012 the social worker recorded that Mejia's "[E]nglish is not so good . . . It became clear that he had difficulty understanding/communicating in [E]nglish. I was going to see him with a translator later today, but in looking through the EMR [(electronic medical records)] it became clear that he does speak [E]nglish." In January 2013 the records reflect Mejia had rejected the offer of an interpreter. See New Jersey Administrative Office of Courts, Directive 3-04 (Mar. 22, 2004); see also Daoud v. Mohammad, 402 N.J. Super. 57, 60 (App. Div. 2008) (holding a tenant was deprived of due process by the court's failure to provide an interpreter); State v. Rodriquez,
(continued)

provided to us does not allay our concerns with regard to these issues. Mental health screening at times was performed through a locked cell door in English, during which Mejia was unresponsive to the questions asked by the mental health professional. Based on this "data" Mejia was determined to be oriented in all spheres and not delusional. We do not have a sufficient record to review the mental health services provided to Mejia against a legally required standard for prison inmates. No hearing has been conducted; no experts have prepared reports or testified.

Not denying his commission of at least one of the infractions from the beginning of the appellate process, Mejia sought relief from the penalty imposed. We have given Mejia the relief he requested. As is true all too often, the time taken in this appeal, including the time necessitated by the failure of the DOC to translate Mejia's agency appeal initially, has nullified any practical effect of this relief. Nonetheless, we anticipate that the requirement for the consideration and articulation of sanctioning factors by hearing officers this opinion imposes will assure the sanctioning of state prisoners becomes more "fair and equitable," a stated goal of the DOC.

---

(continued)
294 N.J. Super. 129, 145 (Law Div. 1996) (reversing two traffic violations on the same grounds).

We affirm the findings of guilt and reverse and remand as to the penalties imposed.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0710-13T4