**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5419-17T4

MARLENE CARIDE, COMMISSIONER
NEW JERSEY DEPARTMENT OF
BANKING AND INSURANCE,

     Petitioner-Respondent,

v.

CATARINA YOUNG,

     Respondent-Appellant,

and

ELITE BENEFITS CORPORATION,

     Respondent.

_____

Submitted September 25, 2019 – Decided October 25, 2019

Before Judges Koblitz, Gooden Brown and Mawla.

On appeal from the New Jersey Department of Banking and Insurance, Agency Docket Nos. E15-44.

Law Office of Jarred S. Freeman, LLC, attorneys for appellant (Hamill R. Patel, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Ryan Shawn Schaffer, Deputy Attorney General, on the brief).

PER CURIAM

Respondent Catarina Young appeals from a June 11, 2018 order of the Commissioner of the New Jersey Department of Banking and Insurance (the Department), affirming with modifications the decision of the Administrative Law Judge (ALJ) and assessing penalties of $299,865[1] for defrauding an employee health care plan. We affirm in part and reverse in part, vacating the penalties imposed for fraudulent activity that occurred outside the ten-year statute of limitations.

Respondent was a designated responsible license producer and part owner of Elite Benefits Corp. (Elite),[2] which managed and brokered health care plans for the Multi-Skilled Employees and Employers Welfare Trust Fund (Fund). Horizon Blue Cross and Blue Shield (Horizon) provided health insurance. Under the policy, only employees and their dependents were eligible for coverage. From 2006 through 2008, respondent enrolled her parents, who were

---

[1] We round all monetary amounts to the nearest dollar.

[2] Elite is not a party to this appeal.

neither employees nor dependents of employees. As a result, the Fund paid premiums and Horizon honored claims on behalf of respondent's parents. In addition, from 2003 through 2006, respondent stole almost one-half million dollars from the Fund.

In 2014, respondent was convicted after a jury trial of theft of $462,342 from the Fund. The following year, the Department filed an order to show cause alleging that respondent and Elite violated the New Jersey Insurance Producer Licensing Act of 2001, N.J.S.A. 17:22A-26 to -57 (Producer Act) and the New Jersey Insurance Fraud Prevention Act, N.J.S.A. 17:33A-1 to -34 (Fraud Act). The Department alleged that respondent and Elite illegally enrolled respondent's parents in the health insurance policy, and respondent misappropriated $462,342 from the Fund by 102 separate transactions. The ALJ granted summary decision in favor of the Department and imposed a total civil penalty of $39,865. The Commissioner adopted the ALJ's decision, with modifications, increasing the civil monetary penalty to $299,865.

On appeal, respondent argues that the Department's claims were barred by the statute of limitations; the Commissioner erred in granting summary decision because respondent presented an issue of fact; and also erred in imposing excessive fines.

3

The Commissioner determined that under the Producer Act, a $2500 penalty was appropriate for each of respondent's 102 misappropriations of Fund money, even though forty-one of these checks fell outside the ten-year statute of limitations period. In addition to ordering respondent to pay the penalty of $255,000, the Commissioner adopted the ALJ's recommendation and imposed $22,865 in attorney fees. The Commissioner modified the $2000 Fraud Act surcharge to impose $1000 against respondent, and $1000 against Elite, individually. The Commissioner also adopted the ALJ's recommendation to revoke respondent's and Elite's producer licenses.

## I. Factual background.

During 2006, 2007, and 2008, Horizon provided health insurance to the Fund's members and their dependents. In June 2006, respondent improperly enrolled her father in the policy as an employee and her mother as her father's dependent.

Respondent admitted that she enrolled her parents in the Fund's health insurance program, but claimed it was with the permission of the trustees and attorney of the fund. She maintained that "many" who were not eligible employees or dependents of employees were enrolled in the fund. Respondent

did not contest the revocation of her license. As for the misappropriation of $462,342, respondent admitted the convictions and stated:

> I was incarcerated for [thirteen] months; [four] months at Middlesex County Jail and [nine] months at Edna Mahan Correctional Facility. I am currently home on ISP.[3]
>
> . . . .
>
> I am opposing the fines because all the transactions that took place were done with the approval of at least one of the trustees. [The criminal court] requested an affidavit from the employer trustees stating how much money was missing from the fund and never received anything. That was the basis of [the criminal court] not ordering restitution.

## II. ALJ findings.

The ALJ found that respondent and Elite violated the Fraud Act when respondent enrolled her parents in the Fund's health insurance plan. As a result of respondent's misconduct, the Fund paid $12,197 in health care premiums, and Horizon paid $13,893 in claims, on behalf of her parents.

The ALJ also found that both respondent's and Elite's conduct violated the Producer Act because it "violated their fiduciary duty to the Fund," and for the

---

[3] ISP refers to the Intensive Supervision Program. R. 3:21-10(b).

Fund to pay "insurance premiums for [respondent's] parents was tantamount to fraud in the conduct of insurance business . . . ."

The ALJ determined there was no factual dispute that respondent took money from the Fund because she was convicted of second-degree theft by unlawful taking of $462,342, N.J.S.A. 2C:20-3, and second-degree misapplication of entrusted property, N.J.S.A. 2C:21-15. Respondent also violated the Producer Act by being convicted of serious crimes. N.J.S.A. 17:22A-40(a)(6), (8) and (16).

The ALJ then considered what civil penalties would be appropriate under Kimmelman v. Henkels & McCoy, Inc., 108 N.J. 123 (1987). In Kimmelman, our Supreme Court established seven factors for courts to consider when imposing civil penalties: (1) "[t]he good or bad faith of respondent"; (2)"[d]efendant's ability to pay"; (3) the "[a]mount of profits obtained from illegal activity"; (4) any "[i]njury to the public"; (5) the "[d]uration of the conspiracy"; (6) the "[e]xistence of criminal or treble damages actions"; and (7) any "[p]ast violations." 108 N.J. at 137–39.

The ALJ found the following aggravating Kimmelman factors: respondent took $462,342 from the Fund in bad faith and the lengthy duration of respondent's conduct.

With regard to mitigating factors, the ALJ found that respondent did not have sufficient assets to pay the more than one million dollars sought by the Department. The ALJ also found insufficient proof that respondent profited by stealing from the Fund or that respondent's misappropriation injured the public. The ALJ found respondent had been punished by being criminally convicted, incarcerated, and fined for her actions; and she had no prior violations. The ALJ determined that the Department was entitled to $39,865: $10,000 for two violations of both the Producer Act and the Fraud Act (the illegal enrollment); $5000 for respondent's misappropriation of money for her personal benefit (the misappropriation); a $2000 Fraud Act surcharge; and $22,865 in attorney fees.

### III. Commissioner's findings.

The Commissioner adopted the findings of the ALJ, with modifications. The maximum fines that may be imposed under the Fraud Act are $5000 for the first violation, $10,000 for the second violation, and $15,000 for each subsequent violation. N.J.S.A. 17:33A-5(a) and (b). The Commissioner may also order restitution, costs, and attorney fees. Under the Producer Act, the Commissioner may impose maximum penalties of $5000 for the first offense and $10,000 for each subsequent offense. N.J.S.A. 17:22A-45(c).

The Commissioner concurred with the ALJ's findings that summary decision was appropriate against both respondent and Elite for the illegal enrollment, and against respondent alone for misappropriation. The Commissioner modified the ALJ's findings to specify that respondent violated N.J.S.A. 17:22A-40(a)(2) ("violating any insurance laws"); N.J.S.A. 17:22A-40(a)(4) ("improperly withholding, misappropriating or converting any monies or properties received in the course of doing insurance business"); and N.J.A.C. 11:17A-4.10 ("an insurance producer acts in a fiduciary capacity in the conduct of his or her insurance business").

The Commissioner found that the record was "more than sufficient to support the ALJ's recommendation" that respondent's and Elite's licenses be revoked. The Commissioner determined that it was appropriate to impose penalties under both the Fraud Act and Producer Act because both had been violated. As for respondent's misappropriation of Fund money, the Commissioner found that each of the 102 thefts was "a separate misappropriation; and thus, a separate violation of the Producer Act." She found that "[s]eparate civil penalties should be assessed for each act . . . ."

Proceeding to the Kimmelman factors, the Commissioner noted that the ALJ found respondent lacked the ability to pay based on a single tax return,

stating that respondent did "clerical work as an independent contractor," earning approximately $10,000 per year. The Commissioner attributed the low income on respondent's 2015 tax return to her incarceration. The record did not contain any other information regarding respondent's ability to pay. The Commissioner found that ability to pay provided only "limited mitigation."

The Commissioner disagreed with the ALJ, finding respondent profited and injured the public when she took $462,342 from the Fund. The Commissioner determined that just because the criminal court did not order restitution did not mean the Fund did not suffer a loss. Respondent's claims that she made loans to the Fund in 2002 did not explain why she misappropriated $462,342 between November 2003 and December 2006, given that she provided no loan or other accounting documentation to support her claim.

The Commissioner determined that respondent "caused actual harm" to the Fund and "the unions and members who comprised the Fund" when she took the money. The Commissioner also considered "less tangible forms of harm" such as the costs of the insurance companies' investigations being passed to "the insurance buying public," and the "erosion of the continued confidence of the public in the integrity of insurance producers . . . ." The Commissioner found that the duration of illegal activity, "weigh[ed] strongly in favor of a significant

penalty." Respondent's conduct "demonstrated a pattern and practice of misconduct."

As for whether imposing a civil penalty for respondent's criminal actions would be unduly punitive in light of other punishments imposed by the criminal process, the Commissioner reasoned that the lack of criminal punishment for fraudulently enrolling respondent's parents in the policy "weigh[ed] in favor of a more significant civil penalty because the respondent cannot argue that . . . she has already paid a price for . . . her unlawful conduct." The Commissioner did find, however, that respondent's criminal sanctions for the misappropriation of the Fund's money "weigh[ed] in favor of mitigating the severity of the sanctions imposed in this matter."

Finally, the Commissioner found that respondent had no prior criminal history, and there was no evidence that respondent or Elite previously violated the Fraud Act or Producer Act.

Based on her analysis of the seven Kimmelman factors, the Commissioner imposed $10,000 for the Producer Act violations and $10,000 for the Fraud Act violations, for the illegal enrollment of respondent's parents in the health insurance policy. The Commissioner then imposed a $255,000 penalty against

A-5419-17T4

respondent, $2500 "for each of the 102 thefts from the Fund . . . ." The Commissioner explained:

> These penalties are fully warranted, not excessive or unduly punitive as the criminal matter imposed no monetary sanctions and did not order restitution, and are necessary to demonstrate the appropriate level of opprobrium for such egregious and extended misconduct by a licensed producer in this State. Moreover, these penalties take into consideration the limited proofs of an inability to pay and [respondent's] criminal conviction for 102 misappropriations. Here, [respondent's] misconduct was egregious because it involved 102 separate invasions of the Fund's monies and therefore warrants imposition of a significant fine. This is significantly less than the maximum fine of $1,0[20],000 [that the Department had requested] for these 102 misappropriations under N.J.S.A. 17:22A-45(c).

The Commissioner also awarded the Department $22,865 in attorney fees, shared jointly and severally between respondent and Elite. The Commissioner agreed with the ALJ that the $2000 Fraud Act surcharge under N.J.S.A. 17:33A-5.1 was appropriate, but modified the ALJ's decision so that $1000 was imposed against respondent, and $1000 was imposed against Elite, individually.

## IV. Legal discussion.

Our review of an administrative agency's decision is limited. Circus Liquors, Inc. v. Governing Body of Middletown Twp., 199 N.J. 1, 9 (2009). This court "does not substitute its judgment of the facts for that of an

administrative agency." Campbell v. N.J. Racing Comm'n, 169 N.J. 579, 587 (2001). Rather, we "defer to matters that lie within the special competence" of the administrative agency. Balagun v. Dep't of Corr., 361 N.J. Super. 199, 202 (App. Div. 2003). "However, a reviewing court is 'in no way bound by [an] agency's interpretation of a statute or its determination of a strictly legal issue.'" Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 158 (2018) (alteration in original) (quoting Dep't of Children & Families, DYFS v. T.B., 207 N.J. 294, 302 (2011)).

"Ordinarily, an appellate court will reverse the decision of the administrative agency only if it is arbitrary, capricious or unreasonable or it is not supported by substantial credible evidence in the record as a whole." Mejia v. Dep't of Corr., 446 N.J. Super. 369, 376 (App. Div. 2016) (quoting Henry v. Rahway State Prison, 81 N.J. 571, 579–80 (1980)).

A. Statute of limitations.

Respondent argues that the decisions of the ALJ and Commissioner should be reversed because the Department's claims were barred by the statute of limitations. Pointing to N.J.S.A. 2A:14-1.2, which sets a ten-year statute of limitations, respondent argues that any check or wire transfer she may have made to herself from the Fund between November 17, 2003 and April 25, 2005

12

may not be considered because the Department did not file its first order to show cause until April 28, 2015.[4]

A ten-year statute of limitations governs this action. N.J.S.A. 2A:14-1.2(a) (stating that unless otherwise provided by statute, "any civil action commenced by the State shall be commenced within ten years next after the cause of action shall have accrued"); Cumberland Cty. Bd. of Chosen Freeholders v. Vitetta Grp., P.C., 431 N.J. Super. 596, 603 (App. Div. 2013) (stating that N.J.S.A. 2A:14-1.2 "is a statute of limitations governing civil actions commenced by the State or its political subdivisions").

In the criminal context, "when a respondent engages in a course of conduct or single scheme to obtain property of another by deception from one or several persons, that conduct is a continuous offense for purposes of the statute of limitations." State v. Diorio, 216 N.J. 598, 619 (2014). A course of conduct or "continuing offense" is one that "involves conduct spanning an extended period of time and generates harm that continues uninterrupted until the course of conduct ceases." State v. Twiggs, 233 N.J. 513, 528 (2018) (quoting State v. Jones, 445 N.J. Super. 555, 568 (App. Div. 2016)). When the jury found

---

[4] The Department concedes that respondent raised the statute of limitations issue administratively, but posits that it was not addressed in either decision because "it apparently did not merit discussion by either the ALJ or the Commissioner."

A-5419-17T4

respondent guilty of these crimes, it aggregated the amount of money involved, finding that she unlawfully stole $462,342. As a result of this finding, respondent was sentenced for second-degree crimes. N.J.S.A. 2C:20-2(b)(1)(a); N.J.S.A. 2C:21-27(a).

Reviewing the facts in the civil context, both the ALJ and Commissioner viewed respondent's thefts as 102 "separate conversion[s] of monies" or "separate violations of the Producer Act." In imposing a penalty, the Commissioner stated numerous times that each of the 102 thefts from the Fund was a separate offense. Because the Commissioner treated respondent's behavior as 102 separate thefts, the Department is barred from seeking civil monetary penalties for forty-one of the thefts, which occurred outside of the statute of limitations window.

The Department argues it should receive the benefit of the "discovery rule." The discovery rule, "provides that in an appropriate case a cause of action will be held not to accrue until the injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered that he may have a basis for an actionable claim." Lopez v. Swyer, 62 N.J. 267, 272 (1973). "The discovery rule is essentially a rule of equity" that allows a plaintiff relief from a statute of limitations bar. Id. at 272–73. The Department failed to demonstrate

14

"harsh results" if respondent is not penalized for the forty-one thefts that fall outside the limitations period. See Vispisiano v. Ashland Chem. Co., 107 N.J. 416, 426 (1987) ("The essential purpose of the [discovery] rule is to avoid harsh results that otherwise would flow from mechanical application of a statute of limitations.").

## B. Summary decision appropriate.

Respondent argues that the Fraud Act and Producer Act were not at issue during her criminal proceedings because she was charged with theft by unlawful taking and misapplication of entrusted property. Respondent maintains that a hearing should therefore have been held. But respondent's underlying admissions and convictions constitute violations of those two acts.

A summary decision "may be rendered if the papers and discovery which have been filed, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to prevail as a matter of law." N.J.A.C. 1:1-12.5(b). This standard is similar to the rule governing a motion for summary judgment. R. 4:46-2(c).

Respondent admitted in her answer that she enrolled her parents, who were not eligible employees, in the policy, and her defense that others were doing the same was rejected. As for the misappropriation of Fund money,

15

respondent also admitted in her answer that she was criminally convicted of second-degree theft by unlawful taking or disposition and second-degree misapplication of entrusted property.

The jury verdict sheet states:

> [B]etween on or about November 17, 2003 and on or about December 26, 2006 . . . [respondent] knowingly and unlawfully [took] or exercise[ed] unlawful control over the movable property of another in an amount of $75,000 or more . . . in an amount of approximately $462,34[2]belonging to [the Fund], with the purpose to deprive [the Fund].

The rule against hearsay includes the following exception for judgments of a previous conviction of a crime: "[i]n a civil proceeding, except as otherwise provided by court order on acceptance of a plea, evidence of a final judgment against a party adjudging the party guilty of an indictable offense in New Jersey [is admissible] . . . against that party, to prove any fact essential to sustain the judgment." N.J.R.E. 803(c)(22).

## C. Fines appropriate.

Respondent argues the monetary sanctions were overly harsh. She contests the Commissioner's findings concerning the Kimmelman factors. Respondent asserts that she did not act in bad faith because "[s]he received permission from the two [F]und trustees and the [F]und attorney to enroll her

16                                                                            A-5419-17T4

parents in the [F]und." The Commissioner rejected this explanation. With regard to stealing from the Fund, she claims she was reimbursing herself for money she had lent the Fund. The criminal jury, however, found to the contrary. The Commissioner had substantial credible evidence in the record as a whole to make her Kimmelman factor determinations.

Respondent also argues that the Commissioner's penalties violated N.J.S.A. 17:33A-5(b) and (c) which set the maximum penalties of "not more than $5,000 for the first violation, $10,000 for the second violation and $15,000 for each subsequent violation." The Commissioner assessed $2500 for each violation, consistent with this statute. Respondent points to the criminal statute, N.J.S.A. 2C:20-2(b)(4), which allows for the consolidation of theft offenses, to argue that her misconduct should only constitute one act instead of 102 acts. Respondent maintains that her "offense involved adding her parents to Horizon's health plan and every event that followed was part of one plan or scheme." We do not accept this argument for civil sanctioning purposes. It conflicts with the determination that forty-one of the acts were outside the statute of limitations. The Commissioner had the authority to view each transaction as a separate violation.

This court's review of an agency's sanction decision is limited. In re License Issued to Zahl, 186 N.J. 341, 353 (2006). "Courts generally afford substantial deference to the actions of administrative agencies . . . ." Ibid. This is because agencies have "expertise and superior knowledge" of their specialized fields, and because they are "executive actors." Ibid. (quoting Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992)). Courts "ha[ve] no power to act independently as an administrative tribunal or to substitute its judgment for that of the agency" unless they are "satisfied that the agency has mistakenly exercised its discretion or misperceived its own statutory authority." In re Polk, 90 N.J. 550, 578 (1982). "[T]he test in reviewing administrative sanctions is 'whether such punishment is "so disproportionate to the offense, in the light of all the circumstances, as to be shocking to one's sense of fairness."'" Ibid. (quoting Pell v. Board of Educ., 34 N.Y.2d 222, 233 (1974)).

The Commissioner imposed a total penalty of $299,865,[5] less than the $462,342 respondent illegally took from the Fund. The Department sought $1,020,000 for the 102 misappropriations. The Commissioner's total penalty was not "so disproportionate to the offense, in the light of all the circumstances,

---

[5] On remand the penalty will be decreased by the $102,500 imposed for the forty-one incidents that fell outside the statute of limitations.

as to be shocking to one's sense of fairness." Ibid. (quoting Pell, 34 N.Y.2d at 233).

Affirmed in part, reversed in part, and remanded to the Commissioner to vacate the penalties imposed for the forty-one transactions that occurred prior to the statute of limitations window. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

19

A-5419-17T4