**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3619-22

STEPHANIE TILLMAN,

    Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

    Respondent.

_____

Submitted June 4, 2024 – Decided July 18, 2024

Before Judges Enright and Whipple.

On appeal from the New Jersey Department of Corrections.

Stephanie Tillman, appellant pro se.

Matthew J. Platkin, Attorney General, attorney for respondent (Janet Greenberg Cohen, Assistant Attorney General, of counsel; Andrew David Spevack, Deputy Attorney General, on the brief).

PER CURIAM

Appellant Stephanie Tillman, an inmate at the Edna Mahan Correctional Facility for Women (EMCF), challenges the sanctions imposed against her under a June 5, 2023 final administrative decision issued by respondent New Jersey Department of Corrections (DOC). We affirm in part, and remand in part, for the DOC to amplify the record and provide an explanation for the sanctions imposed.

I.

At approximately 8:02 a.m. on May 29, 2023, while incarcerated at EMCF, Tillman lunged at Officer Z. Robinson and spat in the officer's eye after the officer told Tillman to stop "hopping" from wing to wing. As other officers responded to the incident, Tillman remained agitated and yelled that she "sp[a]t in that bitch['s] face." After Tillman was restrained, handcuffed, and separated from Robinson, Robinson left EMCF to receive medical attention, leaving EMCF understaffed for the rest of the day.

EMCF officers escorted Tillman to the infirmary and placed her in a constant watch holding cell. At 8:12 a.m., a registered nurse tried to conduct a body assessment, but Tillman refused to cooperate. Tillman was subsequently cleared by a mental-health worker.

At 8:35 a.m., two corrections officers brought Tillman to the South Hall of EMCF. Tillman insisted she be taken to the Restorative Housing Unit (RHU), but the officers told her she would be transported instead to the Critical Care Unit (CCU). Tillman resisted as she entered the CCU, kicked her feet at officers, and locked her legs around an officer's chair. A few minutes later, officers placed her on the ground and in leg irons. Once Tillman stood upright again, she refused to walk, so officers tried to carry her. Tillman then stated she could walk on her own. She also yelled multiple times she was going to kill herself.

Based on her statements of self-harm, Tillman was transported to the institution's hospital and again placed in a constant watch cell. Thereafter, her leg irons and handcuffs were removed, and a doctor met with her. At 8:43 a.m., an officer gave Tillman a gown and directed her to submit to a strip search. Tillman refused the search twice. Several minutes later, she refused a request for a body assessment but ultimately permitted a nurse to conduct the assessment.

At approximately 9:58 a.m., an officer at the hospital saw Tillman pretend to have a seizure by throwing her body backward onto the ground. The officer immediately requested medical assistance, and staff responded to the call. A nurse's examination established Tillman's blood pressure, heart rate, and oxygen

A-3619-22

levels were normal. Moreover, Tillman promptly removed her blood pressure cuff, stood up, and spoke in full sentences. She later acknowledged she did not suffer a medical incident.

Based on Tillman's conduct on May 29, she was charged with the following prohibited acts: *.803/.002 (attempting to commit assault); *.012 (throwing bodily fluid at another person); *.306 (conduct that disrupts the orderly operation); *.254 (refusing to work or accept a program); *.708 (refusing to submit to a search); and *.302 (malingering, N.J.A.C. 10A:4-4.1(a)).[1]

On June 1, 2023, Tillman was evaluated to assess her mental status and the extent of her responsibility for her conduct three days prior. The evaluator opined Tillman's "[p]lacement in RHU [wa]s unlikely to significantly exacerbate mental health problems within two weeks, with regular mental health and custody monitoring." Additionally, the evaluator concluded "Tillman present[ed] as psychologically stable, responsible for her actions, and capable of participating in [a] hearing process."

Tillman proceeded to a disciplinary hearing on June 2, 2023. She received the assistance of a counsel substitute at the hearing, declined to call any

---

[1] "Asterisk offenses 'are considered the most serious and result in the most severe sanctions.'" Mejia v. Dep't of Corr., 446 N.J. Super. 369, 372 n.3 (App. Div. 2016) (quoting N.J.A.C. 10A:4-4.1(a)).

witnesses, and pled guilty to all disciplinary charges, stating, "I lost it. I was not okay mentally. There is no excuse for any of my behavior. I apologize. I ask for leniency [and] combined sanctions." Based on the evidence presented, the disciplinary hearing officer (DHO) found Tillman guilty of each charge and imposed three sets of sanctions.

Regarding the *.302, *.708, and *.254 charges, the DHO sanctioned Tillman to: thirty days loss of commutation time; fifteen days loss of telephone; J-Pay, email, commissary, and media-download privileges; and a referral to Mental Health Assistance. Turning to the *.803/002 charge, Tillman was sanctioned to: 365 days of placement in RHU; 365 days loss of commutation time; thirty days loss of telephone, J-Pay, email, commissary, and media-download privileges; and a referral to Mental Health Assistance. Finally, the DHO sanctioned Tillman for the *.012, and *.306 charges, imposing: 365 days of placement in RHU; 365 days loss of commutation time; thirty days loss of telephone, J-Pay, email, commissary, and media-download privileges; and a referral to Mental Health Assistance.

Tillman administratively appealed from the DOC's decision, seeking leniency, and arguing the sanctions imposed were "excessively severe and should be modified/reduced." On June 5, 2023, a DOC Assistant Superintendent

upheld the DHO's adjudications and sanctions. Concluding "[v]ideo recorded evidence clearly show[ed Tillman's] violent and reprehensible conduct towards Correctional Police Officers," the Assistant Superintendent denied Tillman's "[r]equest for leniency" and found "<u>the volume of disciplinary charges accumulated in one incident</u> d[id] not warrant any degree of leniency." (Emphasis added).

## II.

On appeal, Tillman raises the following arguments:

POINT I

THE [DOC] HAS FAILED TO COMPLY WITH THE LANGUAGE AND INTENT OF N.J.S.A. 30:4-82.7[2]

---

[2]  Under the Isolated Confinement Restriction Act (ICRA), N.J.S.A. 30:4-82.5 to - 82.11, and specifically N.J.S.A. 30:4-82.7, "isolated confinement" is defined as:

> confinement of an inmate in a correctional facility, pursuant to disciplinary, administrative, protective, investigative, medical, or other classification, in a cell or similarly confined holding or living space, alone or with other inmates, for approximately [twenty] hours or more per day in a State correctional facility . . . with severely restricted activity, movement, and social interaction.  Isolated confinement shall not include confinement due to a facility-wide or unit-wide lockdown that is required to ensure the safety of inmates and staff.

AND N.J.S.A. 30:4-82.8[3] AND ITS IMPLEMENTING REGULATIONS[,] AS APPELLANT IS A VULNERABLE INMATE AND HER CUMULATIVE DISCIPLINARY SANCTIONS SHOULD BE REDUCED OR TERMINATED.

POINT II

THE DISCIPLINARY SANCTIONS SHOULD HAVE BEEN RUN CONCURRENTLY BECAUSE THESE CHARGES ALL AROSE FROM THE SAME INCIDENT[].

We decline to consider Tillman's Point I argument because she failed to present it before the initial tribunal. State v. Robinson, 200 N.J. 1, 20 (2009) (citing Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973)). No compelling circumstances are presented here to warrant our departure from this principle. But even if we considered this newly raised argument, we would

---

[N.J.S.A. 30:4-82.7.]

[3] Per N.J.S.A. 30:4-82.8(a)(1):

an inmate shall not be placed in isolated confinement unless there is reasonable cause to believe that the inmate would create a substantial risk of serious harm to himself or another, including but not limited to a correctional police officer or other employee or volunteer in the facility, as evidenced by recent threats or conduct, and a less restrictive intervention would be insufficient to reduce this risk.

[N.J.S.A. 30:4-82.8(a)(1).]

conclude the record is devoid of proof the DOC contravened the ICRA or that Tillman was a member of a vulnerable population when her sanctions were imposed. In fact, it is undisputed that mere days prior to her disciplinary hearing, Tillman received a mental health evaluation and was found to be "psychologically stable" and "responsible for her actions."

Regarding Point II, Tillman contends her "infractions occurred on the same date . . . and in fairly close temporal proximity" over a two-hour period, so "the sanctions [for the prohibited acts] should . . . run concurrently." To support this contention, she relies, in part, on N.J.A.C. 10A:4-5.1(c), which provides: "[RHU] sanctions for all charges received as the result of a single incident shall be served concurrently." (Emphasis added). The DOC counters that Tillman's infractions constituted "multiple incidents," warranting the imposition of consecutive sanctions.

Our review of a final administrative agency decision is limited. Malacow v. N.J. Dep't of Corr., 457 N.J. Super. 87, 93 (App. Div. 2018). "We will disturb an agency's adjudicatory decision only upon a finding that the decision is 'arbitrary, capricious or unreasonable,' or is unsupported 'by substantial credible evidence in the record as a whole.'" Blanchard v. N.J. Dep't. of Corr., 461 N.J. Super. 231, 237-38 (App. Div. 2019) (quoting Henry v. Rahway State Prison,

8

81 N.J. 571, 579-80 (1980)). When reviewing a determination of the DOC in a matter involving prisoner discipline, we consider not only whether there is substantial evidence that the inmate committed the prohibited act, but also whether, in making its decision, the DOC followed regulations adopted to afford inmates' procedural due process. McDonald v. Pinchak, 139 N.J. 188, 194-96 (1995).

Next, we are mindful "[p]risons are dangerous places, and the courts must afford appropriate deference and flexibility to administrators trying to manage this volatile environment." Russo v. N.J. Dep't of Corr., 324 N.J. Super. 576, 584 (App. Div. 1999). Therefore, "[a] reviewing court 'may not substitute its own judgment for the agency's, even though the court might have reached a different result.'" In re Stallworth, 208 N.J. 182, 194 (2011) (quoting In re Carter, 191 N.J. 474, 483 (2007)). "This is particularly true when the issue under review is directed to the agency's special 'expertise and superior knowledge of a particular field.'" Id. at 195 (quoting In re Herrmann, 192 N.J. 19, 28 (2007)).

Still, our review is not "perfunctory," nor is "our function . . . merely [to] rubberstamp an agency's decision." Figueroa v. N.J. Dep't of Corr., 414 N.J. Super. 186, 191 (App. Div. 2010). Instead, we must "engage in a 'careful and principled consideration of the agency record and findings.'" Williams v. N.J.

9

Dep't of Corr., 330 N.J. Super. 197, 204 (App. Div. 2000) (quoting Mayflower

Sec. Co. v. Bureau of Sec. in Div. of Consumer Affs. of Dep't of Law & Pub.

Safety, 64 N.J. 85, 93 (1973)).

Guided by these standards and based on Tillman's guilty pleas to the prohibited acts charged, we do not question the DOC's determination that she committed those acts. However, we cannot discern from the limited record before us why the DOC imposed three sets of sanctions for the six prohibited acts, and specifically why it imposed consecutive, rather than concurrent, RHU sanctions, given its finding "the volume of disciplinary charges accumulated in one incident." (Emphasis added); see N.J.A.C. 10A:4-5.1(c). Thus, we are constrained to remand this matter for amplification of the record to permit the agency to explain the basis for the imposition of consecutive sanctions, and if appropriate, to reconsider whether the sanctions should be concurrently served.

To the extent we have not addressed Tillman's remaining arguments, they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed in part, and remanded in part for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

10