**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0701-24

ALEX COLON,

      Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____

Submitted October 22, 2025 – Decided December 12, 2025

Before Judges Currier and Jablonski.

On appeal from the New Jersey Department of Corrections.

Alex Colon, self-represented appellant.

Matthew J. Platkin, Attorney General, attorney for respondent (Sookie Bae-Park, Assistant Attorney General, of counsel; Elizabeth Merrill, Deputy Attorney General, on the brief).

PER CURIAM

Appellant Alex Colon, an incarcerated person, appeals from a final agency decision by respondent New Jersey Department of Corrections (DOC) finding him guilty of prohibited acts *.202, *.708, *.009 under N.J.A.C. 10A:4-4.1(a) and imposing sanctions including a total of 500 days in the Restricted Housing Unit (RHU). Since we are satisfied the Disciplinary Hearing Officer's (DHO) decision was based on substantial and credible evidence, and was not arbitrary, capricious, or unreasonable, we affirm.

I.

When appellant was incarcerated at East Jersey State Prison, Officers C. Anastasio and M. Patella initiated a "non-routine" search of appellant's cell. The officers ordered appellant and his cellmate to exit their unit and to submit to a pat-frisk. Subsequently, they escorted appellant to a separate area for a strip search. During this process, appellant failed to "clear," that is, he triggered the metal detectors three times. In response, Officer Anastasio instructed appellant to place his hands on his head and repeatedly inquired whether appellant had any weapons on his person. Appellant maintains he answered "no," but the DOC contends appellant did not respond.

The officers moved appellant to a conference room and repeated their questions about weapons and also asked about appellant's possession of any

cell phones. Officer Patella directed appellant to face a wall and remove his shoes and shirt and submit to a strip-search. Appellant complied. However, when appellant was ordered to remove his pants, appellant "suddenly and violently spun around and slammed what was at the time an unknown object on the floor." Unsure if the object was a weapon, the officers restrained and handcuffed appellant. They secured the item and later identified it as a cell phone.

The officers searched appellant's cell and recovered several prohibited items including: an altered, hollowed-out tablet; an altered JPay tablet charger with an iPhone charger attached; an altered foot locker lock, requiring bolt cutters for removal; an L8 Star mini cell phone charging block; the back cover of another cell phone; a cell phone charger; a charging block; various electronics and wires; three large pieces of metal; and an Ibanez multi-tool case containing Allen keys, screwdrivers, and a mini socket wrench.

Appellant was charged with several prohibited acts under N.J.A.C. 10A:4-4.1(a) including *.202 (possession or introduction of a weapon, such as, but not limited to, a sharpened instrument, knife, or unauthorized tool); *.708 (refusal to submit to a search); *.256 (refusing to obey an order of any staff member); *.009 (misuse, possession, distribution, sale, or intent to distribute

or sell, an electronic communication device, equipment, or peripheral capable of transmitting, receiving, or storing data and/or electronically transmitting a message, image, or data that is not authorized for use or retention while assigned to a secure correctional facility).

A disciplinary hearing was scheduled and appellant's request for the assistance of a counsel substitute was granted.

Following a hearing before DHO G. Nolley, the *.256 charge was dismissed as repetitive to *.708. Appellant pled guilty to *.009, not guilty to *.708, and entered no plea to *.202. Appellant and counsel substitute were given an opportunity to make statements for each charge. Appellant declined the opportunity to present witnesses or confront adverse witnesses.

Regarding *.009, appellant asserted that the phone was not his, though counsel substitute stated, "[he] takes responsibility," and requested leniency. For *.708, appellant stated, "I didn't refuse. He didn't tell me not to throw the [sic] phone on the floor. I didn't handle it the best[,] but I don't think I refused." On *.202, appellant admitted ownership of those items, but also noted "[t]hey are not weapons. I used them to fix my word processor." Counsel substitute added, "He said it was not a weapon," and requested leniency and dismissal of the charge.

4

A-0701-24

After reviewing the evidence, and considering appellant's statements, the DHO found appellant guilty of *.202 and *.708, and accepted his guilty plea to *.009. The DHO relied on twenty-eight exhibits, including photographs of the seized items and reports by Officers Anastasio, Patella, and Sergeant Walling to support her decision.

With regard to *.009, the DHO noted appellant accepted responsibility, with no further explanation except admitting the phone was his. The DHO imposed ten days in the Adjustment Unit (AU); 300 days in the RHU; 300 days loss of commutation time (LOCT); thirty days loss of recreational privileges (LORP); and thirty days loss of email, JPay, tablet, media, and canteen privileges. The DHO substantiated these sanctions stating appellant "needs to follow [rules and regulations] to understand the safety issues involved in having an electronic device," and cited appellant's admission of guilt.

For *.202, the DHO referenced multiple items found in appellant's possession, including a metal bar, a metal blade, and several wrenches and screwdrivers, all of which are considered contraband. Despite appellant's claim that these were needed to repair a word processor, the DHO found that "[h]is weapons could have injured himself, his cellmate and staff." For this

offense, the DHO ordered service of 200 days in RHU; 200 days LOCT; thirty days LORP; and thirty days loss of radio and television privileges. Supporting that decision, the DHO noted these "weapons are very serious" and appellant "needs to realize he put himself at risk of injury."

For *.708, the DHO acknowledged appellant initially complied with the officers, however "[h]e decided to stop complying and became violent with his actions," and "threw objects while they were trying to complete the search." No additional sanctions were imposed for this charge. The DHO acknowledged appellant "took some responsibility for his behavior" and understood he endangered himself and the officers.

Appellant appealed the DHO's decision. Assistant Superintendent Douglas Stark affirmed both the guilty findings and sanctions, concluding:

> There was compliance with [Title] 10A provision on inmate discipline which prescribe procedural due process safeguard[s]. Further, there [was] no mis[in]terpretation of the facts. The decision of the [DHO] was based on substantial evidence. The sanctions imposed by the [DHO are] appropriate for the infraction[s]. [Appellant's] request for reduced or suspended sanction is denied. All sanctions are approved.

On appeal, appellant argues the DHO's decision to convict him of *.708 (refusal) was infirm because he presented evidence that he did not refuse to

submit to a search. He also contends the imposed sanction was improper because it exceeded the legislative mandate capping the maximum RHU sanction for any prohibited act to not exceed 365 days. N.J.A.C. 10A:4-5.1(a).

DOC argues in opposition that its final decision should be affirmed because both the guilty adjudications and the imposed sanctions comport with administrative regulations.

## II.

Our review of an agency's decision is limited. Mejia v. N.J. Dep't of Corr., 446 N.J. Super. 369, 376 (App. Div. 2016). In reviewing the DOC's decision, we presume the validity of the DOC's "exercise of its statutorily delegated responsibilities." Lavezzi v. State, 219 N.J. 163, 171 (2014); In re Stallworth, 208 N.J. 182, 194 (2011). Further, our role is "limited to determining: (1) whether the [DOC]'s decision conforms with relevant law; (2) whether the decision is supported by substantial[,] credible evidence in the record; and (3) whether, in applying the law to the facts, the [DOC] clearly erred in reaching its conclusion." Conley v. N.J. Dep't of Corr., 452 N.J. Super. 605, 613 (App. Div. 2018) (citing Stallworth, 208 N.J. at 194).

"We will disturb an agency's adjudicatory decision only upon a finding that the decision is 'arbitrary, capricious or unreasonable,' or is unsupported 'by

A-0701-24

substantial credible evidence in the record as a whole.'" Blanchard v. N.J. Dep't of Corr., 461 N.J. Super. 231, 237-38 (App. Div. 2019) (quoting Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980)). In the context of inmate discipline, N.J.A.C. 10A:4-9.5(a) requires a finding of guilt on a disciplinary charge to be based on "substantial evidence." "Substantial evidence has been defined alternatively as 'such evidence as a reasonable mind might accept as adequate to support a conclusion,' and 'evidence furnishing a reasonable basis for the agency's action.'" Blanchard, 461 N.J. Super at 238 (quoting Figueroa v. N.J. Dep't of Corr., 414 N.J. Super. 186, 192 (App. Div. 2010)). The substantial evidence standard permits an agency to apply its expertise where the evidence supports more than one conclusion. Berta v. N.J. State Parole Bd., 473 N.J. Super. 284, 302 (App. Div. 2022).

The party challenging an agency's decision bears the burden of proving it was "arbitrary, unreasonable or capricious." In re M.M., 463 N.J. Super. 128, 136 (App. Div. 2020) (quoting McGowan v. N.J. State Parole Bd., 347 N.J. Super. 544, 563 (App. Div. 2002)). Our review is not "'perfunctory,' nor is 'our function . . . merely [to] rubberstamp an agency's decision.'" Blanchard, 461 N.J. Super. at 239 (alteration in original) (quoting Figueroa, 414 N.J. Super. at 191). Instead, we "engage in a 'careful and principled consideration

8

of the agency record and findings.'"  Ibid. (quoting Williams v. Dep't of Corr., 330 N.J. Super. 197, 204 (App. Div. 2000)).  We review an agency's statutory interpretation or other legal determination de novo.  Conley, 452 N.J. Super. at 613.

Under this deferential standard, we are satisfied the record contains sufficient, credible evidence to support the DOC's final agency decision as to appellant's guilt and the sanctions were legal, appropriate and neither arbitrary, capricious, nor unreasonable.  See Stallworth, 208 N.J. at 194; In re Carter, 191 N.J. 474, 482-83 (2007).

## A.

In finding appellant guilty of the three charged offenses, the DHO appropriately relied on appellant's own admission, reports from investigating officers, and numerous photographs of the seized items.  The record clearly shows that appellant possessed a cell phone in violation of *.009 and had control over various contraband items, including pieces of metal, a multi-tool, and Allen keys, among other objects classified as "altered" to support the *.202 allegations.

We find no merit in the semantic distinction raised by appellant between the use of the word "refusal" in *.708 and the prohibition against "refusing to

9

obey an order of a staff member" under *.256. This argument is contradicted by the facts in the record. As documented in the officers' reports and accepted by the DHO, after appellant failed to clear a metal detector three times and did not respond when repeatedly asked whether he had any weapons, he "suddenly and violently" spun around during a strip search and slammed an unidentified object onto the floor. The violent nature of these actions prevented the officers from completing their search. Despite the fact appellant did not verbally refuse, his actions prohibited officers from conducting the search rising to the level of the prohibited conduct under *.708.

B.

We discern no error in the imposition of the administrative sanctions corresponding to the DHO's findings of guilt . Prohibited acts *.009 and *.202 are classified as Class A offenses under DOC regulations. See N.J.A.C. 10A:4-4.1(a)(1)(viii). Class A offenses are designated as the "most severe" among the five classes of prohibited acts that may be committed by a prison inmate. Ibid. DOC regulations establish the parameters for sanctions that may be imposed for the commission of a Class A prohibited act. Specifically, the authorized sanctions for a Class A offense include up to fifteen days in an AU,

10

up to 365 days in the RHU per incident, and one or more of the sanctions listed at N.J.A.C. 10A:4-5.1(e) and N.J.A.C. 10A:4-4.1(a)(1).

We are not persuaded that the sanctions imposed for this violation exceeded those authorized by DOC regulations. In particular, N.J.A.C. 10A:4-5.1(a) that caps "the maximum administrative segregation sanction for any prohibited act or acts resulting from a single incident shall not exceed 365 days." Contrary to appellant's arguments, the disciplinary infractions committed by appellant did not arise from a single incident but resulted from distinct events. Although they occurred on the same day, each involved specific and separate prohibited conduct.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division