NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1587-17T3

ANTHONY MALACOW,

      Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

      Respondent.

APPROVED FOR PUBLICATION

November 28, 2018

APPELLATE DIVISION

Argued October 24, 2018 — Decided November 28, 2018

Before Judges Koblitz, Ostrer and Currier.

On appeal from the New Jersey Department of Corrections.

Anthony Malacow, appellant, argued the cause pro se.

Tasha M. Bradt, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Melissa Dutton Schaffer, Assistant Attorney General, of counsel; Tasha M. Bradt and Suzanne M. Davies, Deputy Attorney General, on the briefs).

The opinion of the court was delivered by

KOBLITZ, P.J.A.D.

We remand to the Department of Corrections (DOC) for reconsideration and the articulation of appropriate reasons for the sanctions consistent with N.J.A.C. 10A:4-9.17(a) and Mejia v. New Jersey Department of Corrections, 446 N.J. Super. 369, 378-79 (App. Div. 2016). Inmate Anthony Malacow appeals from the DOC finding that he was guilty of prohibited act *.259, when he failed to comply with an order to submit a thirty-milliliter urine sample within two hours. Malacow argues that he provided a urine sample of the requisite amount, his due process rights were violated before and during his hearing, the hearing officer (HO) ignored potential video evidence, and his counsel substitute was ineffective. Malacow's concerns with regard to a fair hearing and the effectiveness of his counsel substitute are without sufficient merit to require further discussion in a written opinion. R. 2:11-3(e)(1)(E). We reject these meritless claims, but remand for reconsideration of sanctions, and suggest the DOC amend its regulations so that particularized reasons for sanctions are provided in future disciplinary matters.

The HO found Malacow guilty and sanctioned him to fifteen days of loss of recreational privileges, ninety-one days in administrative segregation, loss of ninety days commutation time, 365 days of urine monitoring and permanent loss

2

of contact visits. She also referred him for a mental health follow-up. The findings and sanctions were reviewed and affirmed by the DOC.

Malacow is serving a six-year sentence for burglary and resisting arrest. On November 19, 2017, at 8:45 a.m., while incarcerated in the Southern State Correctional Facility, Malacow was ordered to submit a urine sample after officers discovered "a quart sandwich bag [one-fourth] full of suspected tobacco, a brillo pad and brillo pad wires with burnt ends, and [three] batteries with the wrapping peeled off" in his wall locker. At 10:45 a.m., he had failed to provide a thirty-milliliter urine sample. Malacow was initially charged with: (1) *.201, "[p]ossession or introduction of an explosive, incendiary device or ammunition"; (2) .554, "[p]ossession of tobacco products or matches where prohibited"; and (3) *.259, "failure to comply with an order to submit a specimen for prohibited substance testing." N.J.A.C. 10A:3-5.11(f) and (i) require an inmate to provide a thirty-milliliter urine sample within a two-hour period or face a disciplinary charge.

On November 22, 2017, a disciplinary hearing began, but was postponed so Malacow could receive a psychological evaluation, as required by a federal settlement in 1999. Mejia, 446 N.J. Super. at 374-75 (citing D.M. v. Terhune, 67 F. Supp. 2d 401, 403-05 (D.N.J. 1999)). The evaluation revealed that while

Malacow was suffering from a mental illness, it did not "contribute to [his] behavior manifesting itself in the alleged infraction"; and Malacow was responsible for his actions. The evaluation also concluded that Malacow was "mentally competent to defend [himself] and understand the [disciplinary] proceeding," and placement in detention or administrative segregation would not likely "lead to an exacerbation of mental health problems . . . ."

Five days later, the disciplinary hearing resumed. Malacow was granted a counsel substitute. Although given the opportunity, he did not present witnesses, nor cross-examine any adverse witnesses. The HO found Malacow guilty of *.259, failure to submit to testing.

The assistant superintendent provided the following explanation to Malacow for affirming the HO's determination: "There was no misinterpretation of the circumstances in your charge. Your charge and sanction are commiserate [sic] with the [i]ncident and within the guidelines as described in [N.J.A.C.] 10A. Leniency was afforded with the combination of [b]oth charges. No [m]odification."

Our role in reviewing an administrative agency's decision is limited. Circus Liquors, Inc. v. Governing Body of Middletown Twp., 199 N.J. 1, 9 (2009). We "do[] not substitute [our] judgment of the facts for that of an

administrative agency." Campbell v. N.J. Racing Comm'n, 169 N.J. 579, 587 (2001). Instead, we will "defer to matters that lie within the special competence of an administrative tribunal." Balagun v. Dep't of Corr., 361 N.J. Super 199, 202 (2003). We will not, however, "perfunctorily review and rubber stamp the agency's decision." Id. at 203. "Instead, we insist that the agency disclose its reasons for any decision, even those based upon expertise, so that a proper, searching, and careful review by this court may be undertaken." Ibid.

"Ordinarily, [we] will reverse the decision of [an] administrative agency only if it is arbitrary, capricious or unreasonable or it is not supported by substantial credible evidence in the record as a whole." Mejia, 446 N.J. Super. at 376 (quoting Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980)).

Our Supreme Court has held that inmates are afforded due process rights in disciplinary proceedings. See Avant v. Clifford, 67 N.J. 496, 525-33 (1975). An inmate facing disciplinary action must be provided with the following limited protections: (1) written notice of the charges, provided at least twenty-four hours before the hearing, so the inmate can prepare a defense; (2) an impartial tribunal, consisting of either one HO or a three-member adjustment committee; (3) the assistance of a counsel substitute if the inmate is illiterate or unable to collect or present evidence; (4) the right to call witnesses and present

documentary evidence, provided it is not "unduly hazardous to institutional safety or correctional goals"; (5) the right to confront and cross-examine adverse witnesses; and (6), quoting the Standards on the Inmate Discipline Program section 254.283, "a written statement of the fact-findings is given to the inmate by the [HO] or by the adjustment committee chairman as to the evidence relied upon, decision and the reason for the disciplinary action taken unless such disclosure would jeopardize institutional security." Id. at 525-33.

Reviewing the six Avant factors, other than the lack of a valid statement of reasons for the sanctions, Malacow's due process rights were not violated. First, he signed and dated the entry on the adjudication of disciplinary charge form which stated that he waived the twenty-four hours' notice requirement. Second, Malacow's case was heard before a HO. Third, Malacow requested and was granted a counsel substitute. Fourth, Malacow was given the opportunity to call witnesses. Fifth, he was given the opportunity to cross-examine any adverse witnesses. Finally, Malacow was given a written statement of the evidence the HO relied upon, and the HO's decision.

The reasons for the sanctions imposed, however, were lacking. The HO provided the following reason for imposing these sanctions: "[Inmate] was ordered to void and was unable to provide a sample within the allotted time."

6

Of course, an inmate will not be sanctioned unless he or she committed an infraction. That does not explain why these particular sanctions were imposed instead of different permissible sanctions.

Although not initially raised by Malacow in his pro se appellate brief, we asked for supplemental briefing on the lack of articulation of valid reasons for the sanctions. The DOC argued that because the sanctions were relatively lenient, no reasons were required. The DOC asked us to remand the matter if we disagreed with that argument.

Prohibited act *.259 is a Category B offense. N.J.A.C. 10A:4-4.1(a)(2)(xxvi). Conviction will:

> result in a sanction of no less than [ninety-one] days and no more than 180 days of administrative segregation per incident and one or more of the sanctions listed at N.J.A.C. 10A:4-5.1(g), unless a medical or mental health professional determines that the inmate is not appropriate for administrative segregation placement.
>
> [N.J.A.C. 10A:4-4.1(a)(2).]

An inmate found guilty of a Category B offense, in addition to receiving administrative segregation of ninety-one to 180 days, "shall receive one or more of the following sanctions:"

> 1. Loss of one or more correctional facility privileges up to 30 calendar days;

A-1587-17T3

2.  Loss of commutation time up to 365 calendar days, subject to confirmation by the Administrator;

3.  Loss of furlough privileges for up to two months;

4.  Up to two weeks confinement to room or housing area;

5.  Any sanction prescribed for On-The-Spot Correction (see N.J.A.C. 10A:4-7);

6.  Confiscation; and/or

7.  Up to 14 hours extra duty, to be performed within a maximum of two weeks.

[N.J.A.C. 10A:4-5.1(g).]

If "a medical or mental health professional determines that [an] inmate is not appropriate for administrative segregation placement," then that inmate will receive one or more of the above seven sanctions without administrative segregation. N.J.A.C. 10A:4-5.1(g).

In addition, the State's prisons have a zero tolerance drug and alcohol policy. N.J.A.C. 10A:1-2.2. Therefore, if found guilty of any drug or alcohol-related prohibited act, an inmate "shall have their contact visit privileges terminated while housed in New Jersey State prisons and correctional facilities . . . ." Ibid. A *.259 prohibited act is one that calls for termination of contact visit privileges. N.J.A.C. 10A:4-5.1(o)(6). Malacow was therefore subject to

mandatory "permanent" loss of contact visits under the zero tolerance drug and alcohol policy. N.J.A.C. 10A:1-2.2. The regulations, however, allow an application for restoration of visits after one year. N.J.A.C. 10A:18-6.20.

Malacow's ninety-one days of administrative segregation was the minimum amount of time required under N.J.A.C. 10A:4-4.1(a)(2). Before the administrative segregation was imposed, a psychologist found after evaluation that placement in detention or administrative segregation would not "likely lead to an exacerbation of mental health problems within [twenty-one] days that will significantly reduce [Malacow's] ability to adapt to that setting." Because he was placed in administrative segregation, which is essentially solitary confinement,[1] for ninety-one days rather than twenty-one days, the evaluation was arguably of limited utility.[2] As we stated in Mejia, a DOC August 14, 2015 "Request for Rule Exemption" pointed out the negative impact administrative

---

[1] In Mejia, the DOC argued that administrative segregation was not solitary confinement simply because "inmates have access to several services, including 'five hours of recreation outside of [their] cell each week' and regular reviews by the mental health staff through the locked cell door." Mejia, 446 N.J. Super. at 372 n.4.

[2] The arbitrary nature of this evaluation concerning Malacow's ability to serve twenty-one days in administrative segregation, when he is later given a longer period of time, has not been raised or briefed. We therefore decline to address the issue.

segregation may have on the mentally ill. Mejia, 446 N.J. Super. at 375. "Studies have shown that isolation, under certain circumstances, exacerbates mental health deterioration." Ibid.

The fifteen days' loss of recreational privileges was within the maximum of thirty days' "[l]oss of one or more correctional facility privileges" under N.J.A.C. 10A:4-5.1(g)(1), but it was not a mandated minimum sanction. The loss of ninety days commutation time was also within the 365-day maximum amount of time that could have been imposed. See N.J.A.C. 10A:4-5.1(g)(2). Loss of ninety days of commutation time is a severe consequence because it delays Malacow's parole eligibility by ninety days. See N.J.S.A. 30:4-123.51(a).

N.J.A.C. 10A:3-5.10(b)(10) provides that an inmate shall be tested "[w]hen a Disciplinary [HO]/Adjustment Committee orders testing as part of a sanction for a prohibited substance related prohibited act." Imposing a sanction of 365 days of urine monitoring upon Malacow was permissible.

If the sanctions imposed were the minimum required, and the inmate had no mental health issues that might negate one of the otherwise mandatory penalties, we would agree that reasons for the sanctions were not necessary. In all other situations, an inmate is entitled to individualized reasons for the

specific sanctions imposed.  See Mejia, 446 N.J. Super. at 378-79; Avant, 67

N.J. at 533.

> Under N.J.A.C. 10A:4-9.17(a)(1) to (5), a sanction
>
>> may be individualized by considering such factors as
>> the:
>>
>> 1.  Offender's past history of correctional facility
>> adjustment;
>>
>> 2.  Setting and circumstances of the prohibited
>> behavior;
>>
>> 3.  Involved inmate's account;
>>
>> 4.  Correctional goals set for the inmate; and
>>
>> 5.  The inmate's history of, or the presence of,
>> mental illness.

Thus, under the regulations, the use of these or other sanctioning factors, is left

"entirely to the discretion of the [HO]." Mejia, 446 N.J. Super. at 378.  Pursuant

to our 2016 decision in Mejia, however, the HO must do more than simply

impose a sanction "within the maximum limits set forth in the Administrative

Code." Id. at 379.  Without an articulation of sanctioning factors, "we have no

way to review whether a sanction is imposed for permissible reasons and is

located at an appropriate point within the allowable range." Ibid.  We urge the

DOC to amend the regulations to require a HO to articulate individualized sanctioning factors.

An agency that performs a quasi-judicial function must engage in fact-finding and "provide notice of those facts to all interested parties" to ensure that the agency acted within the scope of its authority and facilitate appellate review. In re Issuance of Permit by Dep't of Envtl. Prot., 120 N.J. 164, 172-73 (1990). We will then defer to an agency's determination when we have "confidence that there has been a careful consideration of the facts in issue and appropriate findings addressing the critical issues in dispute." Bailey v. Bd. Review, 339 N.J. Super. 29, 33 (App. Div. 2001).

Because the only expressed reason for the sanctions imposed was Malacow's guilt of the violation, we have no way of determining whether the HO considered the factors set forth in the administrative code, such as Malacow's mental health issues, or any other factors.

We therefore remand for reconsideration of the sanctions imposed. After new sanctions are imposed, appropriate reasons must be articulated. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION