**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4377-17T2

FRANK PADRO,

      Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____

Submitted September 25, 2019 – Decided October 2, 2019

Before Judges Fuentes and Enright.

On appeal from the New Jersey Department of Corrections.

Frank Padro, appellant pro se.

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Christopher Josephson, Deputy Attorney General, on the brief).

PER CURIAM

Appellant Frank Padro, a State inmate, appeals from the Department of Corrections (DOC) finding that he was guilty of prohibited act *.205, misuse of authorized medication, in violation of N.J.A.C. 10A:4-4.1(a). Padro contends the DOC's decision and the sanctions imposed violated his due process rights. We affirm the adjudication of guilt.

On the morning of July 12, 2017, Padro was leaving the prison medical clinic following a physical therapy session. Before Padro exited the clinic, a corrections officer searched him and found a crumpled piece of paper in his hand. The officer directed Padro to open up the paper, which revealed a crushed pill consisting of white powder. Padro maintained the powdery substance was prescribed pain medication which he intended to take following his physical therapy session. The substance was confiscated and even though medical staff were asked to identify it, they could not. Therefore, the substance was sent to the State Police Laboratory for testing and it was later determined to be codeine. Padro was given an on-site drug test on the morning of the incident and he tested negative for narcotics.

The following day, Padro was charged with committing prohibited acts *.203, possession or introduction of any prohibited substances, and .210, possession of anything not authorized for retention or receipt by an inmate or

2

not issued to him through regular correctional facility channels. The disciplinary hearing commenced in July 2017, and at Padro's request, confrontation hearings involving two officers were held, but the final hearing was postponed pending receipt of the test results from the State Police Laboratory. Padro requested, but was denied, confrontation with a particular nurse, Nurse Pettorini, as it was determined Nurse Pettorini did not witness the incident. Moreover, Padro requested, but was denied, confrontation with Nurse Francois, who he claimed, distributed his medication to him on the morning of the incident. Padro does not claim Nurse Francois witnessed the incident.

At the final hearing on March 27, 2018, the hearing officer amended Padro's charges to a *.205 charge: (1) based upon confirmation that he was prescribed medication that is crushed; (2) that such medication would cause a positive reading on a urine test; and (3) that the medical staff provided the medication on the morning of the incident before he attended the clinic.

Padro pleaded not guilty to the amended charge. During the adjudication hearing, he provided a statement, acknowledging the powdery substance found on him by a corrections officer was his medication and that he intended to take it once his physical therapy session ended.

After considering the testimony and the test results from the State Police Laboratory confirming the narcotic seized was codeine, the hearing officer found Padro guilty of the *.205 charge. The hearing officer concluded Padro did not take his narcotic medication when it was dispensed to him. Medication dispensed on the unit is to be taken when dispensed. Padro violated this protocol when he saved his medication for a later time. The hearing officer noted Padro

> had the opportunity to take his medication in the clinic but chose not to. If his intent was to take it after physical therapy, Padro offers no explanation as to why he didn't just leave it in his cell and take the medication upon his return to his unit or before reporting to work.

The hearing officer observed that the Regional Nurse Manager had confirmed the medication Padro is prescribed would cause a "positive" reading on a urine test and that Padro was found "on the move with a crushed narcotic in his possession." The hearing officer then sanctioned Padro to 270 days of administrative segregation, 270 days' loss of commutation time, 30 days' loss of recreation privileges, and 365 days of urine monitoring and permanent loss of contact visits.

Padro administratively appealed this decision. On May 8, 2018, the Assistant Superintendent at the prison upheld the hearing officer's decision but modified the sanctions to 91 days of administrative segregation, 180 days' loss

4

of commutation time, 30 days' loss of recreation privileges, 365 days of urine monitoring, and 365 days, rather than permanent loss of contact visits. The Assistant Superintendent confirmed she imposed the more lenient sanctions in light of Padro's recent disciplinary history. This appeal followed.

On appeal, Padro argues the agency's decision was not based on substantial evidence in the record. Further, he maintains he was barred from calling a fact witness and presenting exculpatory evidence. In particular, he now insists, without proofs, that Nurse Francois gave him permission to take his medication after physical therapy. However, he did not raise this claim during his adjudication hearing or in the course of his administrative appeal. Moreover, he did not complain during his administrative appeal that he was denied confrontation with Nurse Francois.

In Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973), the Supreme Court held that any issue not properly preserved at the hearing level may not be considered at the appellate level unless the issue relates to jurisdiction or concerns matters of great public interest. Padro's appeal does not raise jurisdictional issues or matters of public interest. Thus, we will not consider any arguments not raised during his adjudication hearing or the administrative appeal.

5

Our review of final administrative agency decisions is limited. Malacow v. N.J. Dep't of Corr., 457 N.J. Super. 87, 93 (App. Div. 2018). An administrative agency's decision will not be reversed unless it is "arbitrary, capricious or unreasonable or it is not supported by substantial credible evidence in the record as a whole." Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980). "'Substantial evidence' means 'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Figueroa v. N.J. Dep't of Corr., 414 N.J. Super. 186, 192 (App. Div. 2010) (quoting In re Pub. Serv. Elec. & Gas Co., 35 N.J. 358, 376 (1961)).

Here, we are satisfied Padro's guilt was based on sufficient evidence in the record, as documented by the hearing officer. Additionally, we note prohibited act *.205 is a Category B offense. N.J.A.C. 10A:4-4.1(a)(2)(svii). Conviction of this act will:

> result in a sanction of no less than [ninety-one] days and no more than 180 days of administrative segregation per incident and one or more of the sanctions listed at N.J.A.C. 10A:4-5.1(g), unless a medical or mental health professional determines that the inmate is not appropriate for administrative segregation placement.
>
> [N.J.A.C. 10A:4-4.1(a)(2).]

The additional sanctions referenced in N.J.A.C. 10A:4-4.1(a)(2) include:

1. Loss of one or more correctional facility privileges up to 30 calendar days;

2. Loss of commutation time up to 365 calendar days, subject to confirmation by the Administrator;

3. Loss of furlough privileges for up to two months;

4. Up to two weeks confinement to room or housing area;

5. Any sanction prescribed for On-The-Spot Correction (see N.J.A.C. 10A:4-7);

6. Confiscation; and/or

7. Up to 14 hours extra duty, to be performed within a maximum of two weeks.

[N.J.A.C. 10A:4-5.1(g).]

If "a medical or mental health professional determines that [an] inmate is not appropriate for administrative segregation placement," then that inmate will receive one or more of the above seven sanctions, but will not be sanctioned with administrative segregation. N.J.A.C. 10A:4-5.1(g).

We defer to the DOC's zero tolerance drug and alcohol policy, N.J.A.C. 10A:1-2.2. Because Padro was found guilty of prohibited act *.205, he was subject to the termination of contact visit privileges and became ineligible for consideration for any custody status lower than medium custody until after contact visit privileges were reinstated. N.J.A.C. 10A:4-5.1(p).

Following our review of the record, we find that not only was there substantial, credible evidence of Padro's guilt, but that, as a matter of fairness, he was provided adequate due process protections in the filing, processing, and hearing of the charges against him. Padro has not demonstrated a deviation from the sanction guidelines. Indeed, he was granted leniency in his sanctions based on a review of his recent disciplinary history. We discern no legal basis to interfere. It is well established that asterisk offenses "are considered the most serious and result in the most severe sanctions." N.J.A.C. 10A:4-4.1(a). Here, Padro's sanction of ninety-one days of administrative segregation was the minimum amount of time required under N.J.A.C. 10A:4-4.1(a)(2), and the balance of his sanctions also were within the permissible range of sanctions, both before and after they were modified. Padro's remaining arguments do not warrant discussion in a written opinion. Rule 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4377-17T2