**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3589-18T2

LLOYD MUHAMMAD, a/k/a
LLOYD M. JACKSON, and
LLOYD GEORGE JACKSON,

      Appellant,

v.

NEW JERSEY STATE
PAROLE BOARD,

      Respondent.

_____

Submitted May 26, 2020 – Decided August 4, 2020

Before Judges Rothstadt and Mitterhoff.

On appeal from the New Jersey State Parole Board.

Lloyd Muhammad, appellant pro se.

Gurbir S. Grewal, Attorney General, attorney for respondent (Jane C. Schuster, Assistant Attorney General, of counsel; Christopher Josephson, Deputy Attorney General, on the brief).

PER CURIAM

Lloyd Muhammad[1] appeals from the New Jersey State Parole Board's (Board) March 27, 2019 final agency decision denying his request for an early discharge from parole supervision. On appeal, he argues that the Board wrongfully denied his request because he has made a "satisfactory adjustment" while on parole, as contemplated by N.J.S.A. 30:4-123.66 and N.J.A.C. 10A:71-6.9, based upon his employment history, his children's success, and his never having failed a drug test. We affirm as we conclude that, despite Muhammad's achievements while on parole, the Board's decision was not arbitrary, capricious, or unreasonable as it was supported by sufficient credible evidence of Muhammad having committed numerous violations of the conditions of his parole.

On March 10, 1976, Muhammad was convicted after a jury trial of murder and armed robbery, and was sentenced to life in prison. Three months later, he pled guilty to two counts of armed robbery, two counts of atrocious assault, and one count of giving false information to the police. On July 30, 1976, Muhammad was sentenced to an aggregate term of seven to ten years in prison, to run concurrent with his previous life sentence.

---

[1] Muhammad is also known as Lloyd Muhammad Jackson and Lloyd G. Jackson.

2

The Board placed Muhammad on parole in May 1995 until September 6, 2000, when it revoked his parole and established a fifteen-month future eligibility term because he failed to report as instructed, failed to get approval for a change of residence or employment, and failed to obtain approval before leaving the State. In addition, on March 19, 2001, Muhammad pled guilty to absconding from parole and uttering a forged instrument. A court sentenced him to an aggregate five-year custodial term, concurrent to his parole-violation term.

The Board again released Muhammad on parole in 2003. Among his general conditions of parole, Muhammad was "required to obey all laws and ordinances," notify his parole officer "immediately after being served with or receiving a complaint or summons," and notify his parole officer before leaving New Jersey.

On July 19, 2018, Muhammad requested to be discharged from parole. He stated he had been classified as "advanced" since 2015, "stayed gainfully employed throughout [his] time in the community," never failed a drug test, raised two children that were gainfully employed, and "continually worked with nonprofit agencies which focus[ed] attention on dysfunctional youth."

3

On July 30, 2018, a representative of the Division of Parole (Division) who was a District Parole Supervisor, wrote to Muhammad informing him that he would not be recommending Muhammad for a discharge for several reasons that included Muhammad's "history under parole supervision in total, police contacts/police reports in recent years that came to [the Division's] attention, and the specific impressions of [his] assigned parole officer in reference to [his] adjustment and cooperation with parole supervision."

Muhammad appealed that determination and a designee of the Division's director affirmed the earlier denial. According to the letter sent to Muhammad, the Division conducted a "review of [Muhammad's] [c]ase [that] disclosed numerous incidents of noncompliance with [his] conditions of supervision that were not addressed in earlier reviews." Specifically, it stated that since his "last release to parole supervision in November 2003, [Muhammad] received no less than [twenty-eight] traffic tickets, which resulted in [fifteen] convictions for moving violations and eight convictions for parking violations." The letter also noted that Muhammad's receiving a speeding ticket in New York, when he had not received permission to leave New Jersey, also constituted a violation of Muhammad's parole conditions. Further, Muhammad never advised his parole officer of any of his traffic tickets or his convictions. The letter concluded by

stating that "[Muhammad's] actions indicate that good reason exists to require continued supervision."

Muhammad appealed the Division's denial of his request to a Board panel. A month later, the Board panel affirmed the Director's decision. In its written decision, the Board panel again cited to Muhammad's numerous traffic violations and his leaving the State without permission, which "violat[ed] conditions of his parole supervision." The Board panel concluded by recommending "that the request for a discharge from parole as specified in N.J.A.C. 10A:71-6.9 'Discharge from Parole' be denied as good cause has not been shown that supervision is no longer required."

Muhammad appealed the Board panel's decision to the full Board, which also denied his request for the reasons stated in its March 27, 2019, "Notice of Final Agency Decision." According to the Board, under N.J.S.A. 30:4-123.66, a parolee "may be discharged from parole supervision prior to the expiration of the sentence imposed, provided that the parolee demonstrates that he has made a satisfactory adjustment while on parole, that continued supervision is not required, and that the parolee has made full payment of any fine or restitution."

The Board denied Muhammad's request for discharge after it also noted Muhammad's twenty-eight traffic violations and his failure to obtain approval

5

from his parole officer before leaving the state of New Jersey. The Board stated that Muhammad was required, under his general conditions for parole, to obey all laws and ordinances and inform his parole officer before leaving the State so that he could first obtain approval for doing so. As Muhammad violated both of those conditions, the Board denied his request. The Board concluded that good cause existed to continue Muhammad's parole supervision. This appeal followed.

The gist of Muhammad's arguments on appeal is that traffic violations and leaving the State on a temporary basis are not violations of the conditions of parole. Moreover, had he been given the hearing before the Board to which he was entitled, he would have demonstrated that he had achieved a "satisfactory adjustment" that warranted his discharge from parole, and relieving him of the punitive nature of parole supervision. We disagree.

"Our role in reviewing an administrative agency's decision is limited." Malacow v. N.J. Dep't of Corr., 457 N.J. Super. 87, 93 (App. Div. 2018) (citing Circus Liquors, Inc. v. Governing Body of Middletown Twp., 199 N.J. 1, 9 (2009)). "Judicial review of the Parole Board's decisions is guided by the arbitrary and capricious standard that constrains other administrative action." Acoli v. N.J. State Parole Bd., 224 N.J. 213, 222-23 (2016). Accordingly, the

Board's decisions should be reversed "only if they are arbitrary and capricious." Trantino v. N.J. State Parole Bd. (Trantino V), 166 N.J. 113, 201 (2001) (Baime, J., dissenting). We must uphold the Board's factual findings if they "could reasonably have been reached on sufficient credible evidence in the whole record." Trantino v. N.J. State Parole Bd. (Trantino IV), 154 N.J. 19, 24 (1998) (quoting N.J. State Parole Bd. v. Cestari, 224 N.J. Super. 534, 547 (App. Div. 1988)).

"'Parole Board decisions are highly individualized discretionary appraisals' and should only be reversed if found to be arbitrary or capricious." Hare v. N.J. State Parole Bd., 368 N.J. Super. 175, 179-80 (App. Div. 2004) (citation omitted) (quoting Trantino V, 166 N.J. at 173). According to our Supreme Court, a reviewing court must determine:

> (1) whether the agency's action violates express or implied legislative policy, i.e., did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [Trantino V, 166 N.J. at 172 (quoting Trantino IV, 154 N.J. at 24).]

In our review of the Board's action for arbitrariness, we

must determine whether [the Board's] factual finding could reasonably have been reached on sufficient credible evidence in the whole record. Under this standard, the agency's decision will be set aside "if there exists in the reviewing mind a definite conviction that the determination below went so far wide of the mark that a mistake must have been made." "This sense of 'wrongness' arises in several ways, among which are the lack of inherently credible supporting evidence, the obvious overlooking or underevaluation of crucial evidence or a clearly unjust result."

[Cestari, 224 N.J. Super. at 547 (citation omitted) (quoting 613 Corp. v. State, Div. of State Lottery, 210 N.J. Super. 485, 495 (App. Div. 1986)).]

In our determination of whether the Board's action was arbitrary, unreasonable, or capricious, we are also guided by certain principles. "New Jersey prisoners have a protected liberty interest, rooted in the language of our parole statute, in parole release, and a resulting constitutional right to due process of law." Thompson v. N.J. State Parole Bd., 210 N.J. Super. 107, 120 (App. Div. 1986). Moreover, inmates possess a liberty interest that entitles them to due process protection of their right to a fair decision. N.J. State Parole Bd. v. Byrne, 93 N.J. 192, 210-11 (1983). "[T]he joint interests of society and the prisoner in basic fairness require some measure of protection from gross miscarriages of justice and totally arbitrary action." Id. at 211. "Only a few, basic procedures are required to deal with the risks of erroneous or arbitrary

determinations in this context." Ibid. Parolees are entitled to notice of the pendency of a disposition, a statement of the reasons for any unfavorable decision, and an opportunity for a response. Ibid.

"Parole is a period of supervised release 'by which a prisoner is allowed to serve the final portion of his sentence outside the gates of the institution on certain terms and conditions, in order to prepare for his eventual return to society.'" State v. Black, 153 N.J. 438, 447 (1998) (emphasis omitted) (quoting State v. Oquendo, 262 N.J. Super. 317, 324 (App. Div.), rev'd on other grounds, 133 N.J. 416 (1993)). A discharge from parole therefore amounts to an earlier termination of the sentence imposed upon the parolee.

The Board is authorized to discharge parolees from parole. Its decision as to whether it should discharge a parolee is guided by specific statutes and regulations. According to N.J.S.A. 30:4-123.66:

> [T]he appropriate board panel may give any parolee a complete discharge from parole prior to the expiration of the full maximum term for which he was sentenced or as authorized by the disposition, provided that such parolee has made a satisfactory adjustment while on parole, provided that continued supervision is not required, and provided the parolee has made full payment of any fine or restitution.

The Board's governing regulations set forth the factors to be considered in response to a request for a discharge from parole. They state the following:

9

(a) The appropriate Board panel may grant any parolee a complete discharge from parole prior to the expiration of the maximum term for which he or she was sentenced, provided that:

1. Such parolee has made a satisfactory adjustment while on parole; and

2. Continued supervision is not required;

3. The parolee has made full payment of any assessment, fine, penalty, lab fee or restitution or the parolee has in good faith established a satisfactory payment schedule; or

4. In the opinion of the Board panel continued supervision is not warranted or appropriate based upon a review of the facts and circumstances considered pursuant to N.J.A.C. 10A:71-7.10, 7.11, 7.12, 7.16 and 7.17, 7.17A or 7.17B.[2]

[N.J.A.C. 10A:71-6.9(a)(1) to (4).]

The same regulation also provides that "[a] decision to discharge an adult parolee serving a sentence for murder shall be rendered by the Board. The Board may require an adult parolee to appear for an interview before the Board prior to a decision being rendered." N.J.A.C. 10A:71-6.9(h).

With those guiding principles in mind, we turn to Muhammad's primary argument about his having demonstrated a "satisfactory adjustment" sufficient

_____

[2] These regulations relate primarily to parole revocation and are not at issue in this matter.

to warrant his discharge from parole. While we applaud Muhammad on his success in raising his family, maintaining employment, helping others, and never using drugs, we cannot conclude that the Board's denial of discharge was unsupported, and therefore arbitrary, in light of the numerous violations of the conditions of parole to which the Board cited in its final decision. Contrary to Muhammad's belief, the accumulation of traffic offense convictions and leaving the State without permission, even temporarily, constitute violations of parole. See N.J.A.C. 10A:71-6.4 (stating an offender granted parole "shall comply" with various general conditions of parole, including requirements to "[o]bey all laws and ordinances" and "[o]btain permission prior to leaving the state of the approved residence for any purpose"). His failure to recognize that reality after his initial parole revocation lends further support to the Board's decision here.

We are equally satisfied that, contrary to Muhammad's contention on appeal that he was denied due process, the Board afforded him the due process to which he was entitled. The premise to Muhammad's argument in this regard is also simply mistaken—he was not entitled to the hearing he now demands. See N.J.A.C. 10A:71-6.9(h). There was no requirement for the Board to have a hearing for Muhammad. Nevertheless, Muhammad was given numerous opportunities to appeal the continued denial of his early discharge request, and

A-3589-18T2

indeed, he submitted several briefs at each juncture with supporting documentation that were considered by the Division and the Board. And, the Board provided him with the factual basis for its reasons for denying his request, which Muhammad does not refute, but only incorrectly argues did not constitute a history of parole violations. Nothing more was required.

To the extent we have not specifically addressed any of Muhammad's remaining contentions, we conclude they are without sufficient merit to warrant discussion in a written decision. See R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3589-18T2