**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3882-19

JAMES WILLIAMS,

     Appellant,

v.

NEW JERSEY STATE
PAROLE BOARD,

     Respondent.

_____

          Submitted May 3, 2021 – Decided September 14, 2021

          Before Judges Messano and Smith.

          On appeal from the New Jersey State Parole Board.

          James Williams, appellant pro se.

          Gurbir S. Grewal, Attorney General, attorney for respondent (Jane C. Schuster, Assistant Attorney General, of counsel; Suzanne Davies, Deputy Attorney General, on the brief).

PER CURIAM

James Williams (Williams) appeals a final decision by the State Parole Board (Board) denying parole and imposing a fourteen-month future eligibility term. We affirm for the reasons set forth below.

On April 4, 2014, Williams pleaded guilty to robbery and aggravated assault with a firearm. He was sentenced to an eight-year term of incarceration, with five years parole supervision. With regard to the aggravated assault charge stemming from the robbery, Williams was sentenced to an eighteen-month term of incarceration and five years of parole supervision to run concurrently with the robbery charge. That same day, Williams also pleaded guilty to aggravated assault for a 2013 incident which occurred while he was in jail. On that charge, he received an eight-year term of incarceration and five years of parole supervision to run concurrently with his robbery sentence.

Prior to the instant charges, Williams had twelve previous adult arrests resulting in four convictions. They included eluding law enforcement officers, possession of controlled dangerous substances, and receiving stolen property. The four convictions resulted in consecutive three-year incarceration terms. Williams was paroled on the second sentence, but ultimately violated parole and was returned to custody.

2

A-3882-19

During his incarceration for the April 4, 2014 convictions, Williams was disciplined over time for a series of Department of Corrections (DOC) rules infractions. The infractions he was found guilty of included theft, fighting, disrupting the orderly running of the institution, and possession of anything related to a security threat group.[1]

On September 25, 2018, Williams completed his incarceration term and was released to mandatory supervision. He was referred to the Community Resource Center (CRC), a non-residential transitional program. Conditions of the program included that he have an approved residence, obtain a job, remain employed, and report to the CRC once per week. He initially complied, then quit his job at a party rental company in late October. He next missed his mandatory reporting two weeks in a row in November 2018. On November 26, 2018, the CRC terminated Williams from its program and referred him to a residential program, Kintock-STEPS (Kintock) in Newark.

---

[1] In December 2014, Williams was found guilty of charge *.153, stealing/theft. In April 2015, Williams was found guilty of charge *.004, fighting with another person and charge *.306, conduct which disrupts the orderly running of the correctional institution. In September 2017, Williams was found guilty of charge *.011, possession or exhibition of anything related to a security threat group. Williams was also found guilty of two charges for refusing work/assignment in April 2015 and May 2017.

A-3882-19

At Kintock, the intake officer advised Williams of the conditions for successful completion of a residential program, which was a more intensive level of supervision. Kintock stressed certain program conditions to Williams, including that his work release pass was valid only for the location identified on his pass. Further, he was informed that if Kintock could not account for his whereabouts, he would be deemed an absconder, and a warrant would be issued for his arrest. Most importantly, Kintock informed Williams that failure to complete the program due to an unsuccessful discharge or absconding would be considered a violation of parole and may result in his parole being revoked. Williams informed the Kintock intake officer that he understood all of the conditions and had no questions. Williams's expected program completion date was February 24, 2019.

While under mandatory supervision at CRC and Kintock, Williams took steps to turn his life around. He enrolled in and completed two courses, with subjects that included family reunification, parenting, cognitive-behavioral change, re-entry preparation, and "green technology."

On February 15, 2019, Williams called the residential facility at 5:25 p.m., informing them that he "just got on the bus" and that he was reporting back to the program. Williams's reporting time at Kintock was 5:30 p.m.

A-3882-19

Williams had been working two weeks without incident and regularly took public transportation. A Kintock staffer informed him that he had until 6:30 p.m. to report. Williams failed to return to the Kintock residential facility in a timely manner.

Kintock discharged him immediately and a warrant for his arrest was issued at 9:03 p.m. on February 15, 2019. The record shows Williams apparently skipped work or left work early that day to visit his mother in the hospital without receiving permission from Kintock for an unescorted or escorted visit to the hospital. Inexplicably, he never returned to Kintock. Williams was apprehended without incident on April 18, 2019 in Paterson. Williams's mandatory supervision was revoked in a DOC hearing on July 11, 2019 and he was remanded to custody.

The Board conducted a parole eligibility hearing on February 29, 2020. At the initial hearing, Williams challenged a panel member's right to participate because the member participated in a 2007 parole hearing regarding Williams. After the member stated on the record that their 2020 decision to deny parole was not based "solely on the original charges," nor did they "express any feelings regarding [Williams's] original offense," the panel dismissed the argument and decided Williams' eligibility. The panel made

detailed findings, addressing mitigating factors such as Williams's participation in behavior-specific programs, his remaining infraction-free, and favorable institutional adjustment. The panel found reasons for denial, including but not limited to Williams's lengthy criminal history and his failure to complete two community programs, CRC and Kintock. The Board issued a final decision on April 22, 2020, adopting the findings of its panel and also rejecting Williams's argument of improper conduct by the panel.

Williams appeals, arguing that the Board was arbitrary and capricious in denying him parole and imposing a fourteen-month FET.

"Our role in reviewing an administrative agency's decision is limited." Malacow v. N.J. Dep't of Corr., 457 N.J. Super. 87, 93 (App. Div. 2018) (citing Circus Liquors, Inc. v. Governing Body of Middletown Twp., 199 N.J. 1, 9 (2009)). "Judicial review of the Parole Board's decisions is guided by the arbitrary and capricious standard that constrains other administrative action." Acoli v. N.J. State Parole Bd., 224 N.J. 213, 222-23 (2016). Accordingly, the Board's decisions should be reversed "only if they are arbitrary and capricious." Trantino v. N.J. State Parole Bd. (Trantino V), 166 N.J. 113, 201 (2001) (Baime, J., dissenting). We must uphold the Board's factual findings if they "could reasonably have been reached on sufficient credible evidence in

the whole record." Trantino v. N.J. State Parole Bd. (Trantino IV), 154 N.J. 19, 24 (1998) (quoting N.J. State Parole Bd. v. Cestari, 224 N.J. Super. 534, 547 (App. Div. 1988)). According to our Supreme Court, a reviewing court must determine:

> (1) whether the agency's action violates express or implied legislative policy, i.e., did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [Trantino V, 166 N.J. at 172 (quoting Trantino IV, 154 N.J. at 24).]

In our review of the Board's action for arbitrariness, we must determine whether the Board's factual finding could reasonably have been reached on sufficient credible evidence in the whole record. Under this standard, the agency's decision will be set aside "if there exists in the reviewing mind a definite conviction that the determination below went so far wide of the mark that a mistake must have been made." New Jersey State Parole Bd. v. Cestari, 224 N.J. Super. 534 (App. Div. 1988). "This sense of 'wrongness' arises in several ways, among which are the lack of inherently credible supporting evidence, the obvious overlooking or underevaluation of crucial evidence or a

7

clearly unjust result." Ibid. (quoting 613 Corp. v. State, Div. of State Lottery, 210 N.J. Super. 485, 495 (App. Div. 1986)).

Applying these well-established principles, we discern no basis to overturn the Board's final decision. The Board considered the relevant facts and submissions in revoking Williams's mandatory supervision status and establishing a fourteen-month FET. The Board's determination is amply supported by the record and consistent with controlling law. Its decision was not arbitrary, capricious, or unreasonable. Williams's parole violations were serious and persistent. He was unsuccessfully discharged from two mandatory supervision programs. After getting discharged from CRC, he obtained a second chance at Kintock. There he successfully completed important coursework designed to assist him in his transition back to the community. However, with slightly over a week to go until his graduation from the program, he absconded on February 15 and never turned himself in. The evidence was clear and convincing that he remained at-large and non-compliant until April 8 when he was apprehended. Finally, the record shows no facts which justify reversing the Board's decision based on Williams's argument that a Board member improperly participated in the initial decision simply because he served on Williams's parole review panel in 2007. To the

extent we have not addressed any of Williams's arguments, we conclude they are without sufficient merit to warrant discission in a written opinion. See R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION