**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4034-19

EARL DOWNEY,

     Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

     Respondent.

_____

Submitted November 30, 2021 – Decided January 5, 2022

Before Judges Rothstadt and Natali.

On appeal from the New Jersey Department of Corrections.

Earl Downey, appellant pro se.

Andrew J. Buck, Acting Attorney General, attorney for respondent (Sookie Bae-Park, Assistant Attorney General, of counsel; Nicholas Falcone, Deputy Attorney General, on the brief).

PER CURIAM

Earl Downey, an inmate at Southern State Correctional Facility (SSCF), appeals from a May 12, 2020 final agency decision issued by the New Jersey Department of Corrections (DOC) finding him guilty of prohibited act *.252, encouraging others to riot, and imposing sanctions. We affirm.

On April 9, 2020, at the height of the COVID-19 pandemic, a riot erupted at SSCF. At about 9:30 p.m., all sixty-three inmates housed in Unit 2R, a Covid-19 quarantine unit, congregated in the unit's day room. All of the inmates, including Downey, were recently transferred to the unit and wore face masks to comply with DOC protocols to prevent the spread of COVID-19. At that time, SSCF officers ordered all inmates in the unit to disperse from the day room and stand count, which meant they were to return to their cell and sit on their bunks, to facilitate the entry of an additional twelve inmates being transferred into their unit. The inmates, who objected to the addition of more inmates into the unit, refused to comply with the direction to stand count and, instead, remained in the day room. A riot ensued.

Some inmates barricaded the unit shut with a table from the day room up against the door that officers attempted to enter through. Other inmates stood around yelling and cursing at officers and each other. At times, inmates used

computer kiosks and telephones, all without authorization and in direct violation of officers' multiple orders to stand count.

Downey was among the inmates who violated the orders to disperse from the day room and stand count. According to Downey, he failed to comply with orders by using the phone at 9:39 p.m., for nine minutes while officers attempted to restore control and safety by ordering the inmates back to their cells.

Officers could not identify the inmates and their roles in the riot at all times because the inmates were all new to the unit, wore face masks, and blocked officers' line of sight through the door with a table. Video surveillance in the unit recorded the riot, but also did not help identify inmates because of the face masks.

About six hours after the riot commenced, the DOC's Special Operations Group and K-9 Unit were able to secure and transfer all sixty-three inmates, including Downey, to a quarantine unit at South Woods State Prison.

On April 11, 2020, Downey was charged with *.252, encouraging others to riot, a prohibited act under N.J.A.C. 10A:4-4.1(a).[1] Prior to his hearing, Downey requested and was granted the assistance of a counsel substitute, and

---

[1] The other sixty-two inmates in Unit 2R at the time of the riot were also charged with the same institutional infraction as Downey.

pleaded not guilty. In response to the charge, he admitted he used the phone during the riot, claiming it was out of fear and he did not want anything to do with what was going on. He also submitted a statement from an inmate witness and was granted confrontation of three of the officers who were involved in the transfer of the inmates to the unit.

On April 30, 2020, a hearing officer presided over Downey's hearing. In addition to Downey's evidence, the hearing officer considered video evidence of the incident, phone logs, and the written statements of the officers that included responses to questions from inmates. According to that evidence, none of the inmates in the unit, who were all in the day room at the time, followed the directive to stand count.

At the conclusion of the hearing, the hearing officer issued a written decision, concluding Downey "encouraged inmates to riot," thereby committing the prohibited act charged. The officer found there were several orders to stand count that were given at 9:30 p.m., which were clear and audible to Downey, and he used the phone starting at 9:39 p.m. for nine minutes, which was not permitted at that time. As for his claim that he made a phone call out of fear, the hearing officer determined Downey was not credible. The hearing officer concluded "his behavior can be viewed as non-compliant and therefore a part of

 A-4034-19

the overall disturbance. Any behavior that is not compliant with staff orders can be viewed as encouraging non-compliant behaviors from others." In imposing his sanction, the hearing officer explained his behavior "could have led to violence and injuries for staff and inmates . . . . Said behaviors cannot be tolerated and any future behavior of this type must be deterred for safety and security purposes." Downey was sanctioned to a 210-day administrative segregation, ninety-day loss of commutation time, and ten-day loss of recreation privileges.

Downey's subsequent administrative appeal was denied on May 12, 2020. In the written decision issued by an assistant superintendent, the DOC upheld the hearing officer's determination and stated the following:

> The charge was reviewed and the sanction also reviewed. All procedural safeguards were adhered to by the [DHO] and found to be in accordance with NJAC10. The video supports that all inmates were actively engaged in the incident whether acting out, OR refusing to disperse. There is no video evidence that any inmate took precaution to recuse himself during the incident to his bunk or uncover his face to ensure identity for non-participation. Additionally, the custody interviews were consistent in their responses. There is no support or compelling argument to not support the sanction as written.

This appeal followed.

On appeal, Downey argues the DOC's decision was not supported by substantial credible evidence, and therefore must be reversed. We disagree.

Our review of an agency decision is limited. In re Stallworth, 208 N.J. 182, 194 (2011); Malacow v. N.J. Dep't of Corr., 457 N.J. Super. 87, 93 (App. Div. 2018). We presume the validity of the "administrative agency's exercise of its statutorily delegated responsibilities." Lavezzi v. State, 219 N.J. 163, 171 (2014). We will not disturb an agency's decision on appeal "unless it is arbitrary, capricious[,] or unreasonable or not supported by substantial credible evidence in the record." Jenkins v. N.J. Dep't of Corr., 412 N.J. Super. 243, 259 (App. Div. 2010). Substantial credible evidence means "such evidence as a reasonable mind might accept as adequate to support a conclusion." Figueroa v. N.J. Dep't of Corr., 414 N.J. Super. 186, 192 (App. Div. 2010) (quoting In re Pub. Serv. Elec. & Gas Co., 35 N.J. 358, 376 (1961)).

In the context of prisons, we have long recognized they are "dangerous places, and the courts must afford appropriate deference and flexibility to administrators trying to manage this volatile environment." Russo v. N.J. Dep't of Corr., 324 N.J. Super. 576, 584 (App. Div. 1999). A reviewing court "may not substitute its own judgment for the agency's, even though the court might have reached a different result." Stallworth, 208 N.J. at 194 (quoting In re

Carter, 191 N.J. 474, 483 (2007)). "This is particularly true when the issue under review is directed to the agency's special 'expertise and superior knowledge of a particular field.'" Id. at 195 (quoting In re Herrmann, 192 N.J. 19, 28 (2007)).

However, our review is not "perfunctory" or meant to merely "rubberstamp an agency's decision." Figueroa, 414 N.J. Super. at 191 (citation omitted). We must "engage in a careful and principled consideration of the agency record and findings." Ibid. (citation omitted). Additionally, we are not bound by an agency's "interpretation of a statute or its determination of a strictly legal issue." Carter, 191 N.J. at 483 (citation omitted).

Pursuant to N.J.A.C. 10A:4-4.1(a):

> An inmate who commits one or more of the following numbered prohibited acts shall be subject to disciplinary action and a sanction that is imposed by a [DHO] . . . . Prohibited acts preceded by an asterisk (*) are considered the most serious and result in the most severe sanctions . . . . Prohibited acts are further subclassified into five categories of severity (Category A through E) with Category A being the most severe and Category E the least severe.

Category A prohibited acts include *.252, encouraging others to riot. Ibid. A DHO's decision that an inmate committed a prohibited act must be supported by "substantial evidence." N.J.A.C. 10A:4-9.15(a); Figueroa, 414 N.J. Super. at 192.

Applying these principles, we conclude the DOC's decision that Downey was guilty of prohibited act *.252, encouraging others to riot, was supported by substantial credible evidence. Although his specific role in the riot at all times cannot be determined, it was undisputed he made a nine-minute phone call during the riot, after officers ordered all inmates to stand count. His admission that he was on the phone at that time was sufficient evidence to support his guilt. Additionally, phone records and officers' reports corroborated that he was on the phone in direct violation of officers' orders to stand count. His deliberate violation encouraged others' non-compliant behavior, including rioting, and consequently interfered with the prison's ability "to manage th[e unit's] volatile environment." Russo, 324 N.J. Super. at 584. Under these circumstances, we have no cause to disturb the DOC's determination in this case.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4034-19