**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2680-21

GREGORY ROYAL,

      Appellant,

v.

NEW JERSEY STATE
PAROLE BOARD,

      Respondent.

_____

Submitted on October 2, 2023 – Decided November 17, 2023

Before Judges DeAlmeida and Bishop-Thompson.

On appeal from the New Jersey State Parole Board.

Fang Liu, attorney for appellant.

Matthew J. Platkin, Attorney General, attorney for respondent (Sookie Bae-Park, Assistant Attorney General, of counsel; Christopher C. Josephson, Deputy Attorney General, on the brief).

PER CURIAM

Gregory Royal appeals the final agency decision of the New Jersey State Parole Board (Board) revoking his parole. We affirm.

I.

We glean defendant's lengthy criminal history and incarceration from the record. In 1972, Royal was convicted of breaking and entering. He received a suspended sentence and was placed on three years' probation.

While on probation in 1975, he was convicted and sentenced to three to five years for armed robbery, two to three years for possession of stolen property, and three to five years for aiding and abetting.

In 1979, Royal was convicted of the attempt to obtain money under false pretenses, receiving stolen property, and conspiracy. He received a suspended sentence of two to three years in state prison with five years of probation.

Four years later, on September 23, 1982, Royal was sentenced to an aggregate term of fifty years, with a ten-year period of parole ineligibility, for four counts of robbery, two counts of conspiracy, and one count each of burglary, kidnapping, and terroristic threats. He was released on parole on September 15, 1992, on the condition that he obey all state laws and ordinances.

In August 1996, Royal attacked an elderly woman in her home. He went missing in early October. A parole warrant was issued on October 10, 1996.

2

The Board held a revocation hearing on October 23, 1996, and on December 18, 1996, the panel determined Royal violated his parole because he failed to notify his parole officer of his arrest and for failing to refrain from drug use. However, the Board determined that revocation was not desirable at that time and decided to make Royal's parole effective again on January 31, 1997. The Board also afforded him the opportunity to attend a 180-day residential chemical abuse recovery program.

On January 16, 1997, Royal was arrested on charges of first-degree robbery, second-degree aggravated assault, third-degree aggravated assault with a deadly weapon, third-degree aggravated assault causing significant bodily injury, third-degree terroristic threats, second-degree burglary, first-degree kidnapping, third-degree criminal restraint, third-degree possession of a weapon for an unlawful purpose, and fourth-degree of unlawful possession of a weapon related to the August incident.

Based upon those charges, the Camden County Prosecutor's Office requested a parole revocation hearing. On March 20, 1997, the Board vacated the December 18, 1996 parole decision. Subsequently, the Prosecutor's Office withdrew the request for a revocation hearing. On September 4, 1997, the Board

A-2680-21

panel reinstated its original decision from December 18, 1996 to continue Royal on parole status.

Royal was convicted on all counts except for kidnapping on November 13, 1998. On January 25, 1999, Royal was sentenced to life with a twenty-five-year parole bar, making him eligible for parole on January 25, 2024. He received 234 jail credits for his incarceration between 1996 and 1999.

On April 13, 1999, the Board issued a parole violation warrant based upon Royal's failure to obey all laws and ordinances as a result of his November 1998 conviction. Thereafter, on April 23, 1999, the Board issued a notice of final revocation hearing, scheduling the final revocation hearing on May 3, 1999. Royal requested an indefinite postponement prior to the hearing. He then requested four indefinite postponements in October 2000, April 2002, July 2003, and July 2004. The Board granted all postponement requests.

Royal did not request a final revocation hearing until May 2021. Originally scheduled for August 6, 2021, the hearing was twice postponed by Royal's former counsel because a pending trial was scheduled and for a death in counsel's family. The hearing was rescheduled to October 8, 2021, the day before Royal believed he would be eligible for parole.

4

Royal, represented by counsel, pleaded not guilty at the parole violation hearing. Later in the hearing, Royal admitted that he failed to obey all laws as evidenced by the 1999 judgment of conviction which was admitted into evidence. After hearing testimony, the hearing officer revoked Royal's parole, finding that he failed to obey state laws as evidenced by the 1998 conviction and life imprisonment sentence. The hearing officer concluded that the violation was "very serious" and revocation was desirable.

Royal challenged the hearing officer's conclusions and not the finding of facts. Royal asserted: he believed that his revocation of parole was cured in 1997 and the recent parole revocation hearing should not have taken place; he served his full sentence for the 1997 crime; he is now eligible for parole; and he should be paroled because of his age and medical issues.

The Board panel concluded there was clear and convincing evidence that Royal violated the condition of parole by committing criminal acts in 1997. The panel found Royal's "first opportunity on parole supervision" began on September 15, 1992. The panel agreed with the hearing officer that the commission of the crimes in August 1996 while on parole supervision was "very serious." The Board panel upheld the recommendation of the hearing officer to

5

revoke parole and impose a thirty-eight-month parole eligibility term for the 1992 sentence.

Royal administratively appealed the Board panel's determination. He also filed a supplemental appeal asserting a litany of hearing violations and due process violations because of the lengthy delay in holding the final revocation hearing. Relevant to this appeal, Royal argues: the Board panel failed to document that a preponderance of the evidence indicates a substantial likelihood that he will commit a new crime if released on parole; that he has failed to cooperate in his own rehabilitation; or that there is a reasonable expectation that he will violate the conditions of parole if released. Royal also asserts the Board panel's decision was contrary to written Board policy and procedure and that the Board panel failed to comply with the Board's Professional Code of Conduct, resulting in a double jeopardy violation and a violation of his due process rights.

On March 30, 2022, the Board issued a final agency decision affirming the Board panel's decision. The Board noted Royal's parole supervision began on September 15, 1992 and he was arrested on new charges in January 1997. Royal's 1999 conviction and resultant sentence of life imprisonment with the twenty-five-year parole bar was not revoked when his incarceration began in 1997. The Board further found the prosecutor's decision to withdraw its request

6

to initiate an accelerated revocation hearing during the pendency of Royal's criminal charges "did not foreclose the Board from initiating revocation proceedings following [his] conviction and the imposition of sentence."

Additionally, the Board highlighted when Royal received the initial notice of the revocation hearing, he "elected to indefinitely postpone his final revocation hearing to explore the possibility of attempting to obtain a new trial regarding his conviction; and that it was [he], [and] not the Board, who delayed the conducting of the final revocation hearing." The Board stated Royal's reasons for the postponement: he had requested the court to modify his sentence; he had applied for an award of additional jail credit toward his new conviction; and he had requested a review as to how his additional sentence was to be served in relation to the parole violation.

The Board found Royal was obligated to notify the Board of his desire to proceed with his revocation hearing. Moreover, it was not the Board's "inaction" that resulted in a delay of the scheduled hearing but, instead, it was Royal's "failure to do so." The Board further found "at no point during his twenty-four year [] term of incarceration did [Royal] notify the Board that he was ready to proceed with his hearing." The Board therefore found Royal's contention to be without merit.

A-2680-21

This appeal follows. Royal argues that the Board erred when it calculated his parole eligibility date and denied his application for parole because his release would better serve society.

II.

"Our role in reviewing an administrative agency's decision is limited." Malacow v. N.J. Dep't of Corr., 457 N.J. Super. 87, 93 (App. Div. 2018) (citing Circus Liquors, Inc. v. Governing Body of Middletown Twp., 199 N.J. 1, 9 (2009)). "Our review of the Parole Board's determination[s] is deferential in light of its expertise in the specialized area of parole supervision . . . ." J.I. v. N.J. State Parole Bd., 228 N.J. 204, 230 (2017) (citing McGowan v. N.J. State Parole Bd., 347 N.J. Super. 544, 563 (App. Div. 2002)). We recognize that "[t]o a greater degree than is the case with other administrative agencies, the Parole Board's decision-making function involves individualized discretionary appraisals." Trantino v. N.J. State Parole Bd., 166 N.J. 113, 201 (2001) (citing Beckworth v. N.J. State Parole Bd., 62 N.J. 348, 358-59 (1973)). Such appraisals are presumed valid. McGowan, 347 N.J. Super. at 563. Accordingly, "[w]e will reverse a decision of the Board only if the offender shows that the decision was arbitrary or unreasonable, lacked credible support in the record, or violated legislative policies." K.G. v. N.J. State Parole Bd., 458 N.J. Super. 1,

30 (App. Div. 2019) (citing <u>Trantino v. N.J. State Parole Bd.</u>, 154 N.J. 19, 24-25 (1998)).

The Board's decision to revoke parole must be supported by clear and convincing evidence. N.J.A.C. 10A:71-7.12(c)(1). Evidence is clear and convincing when:

> [T]he trier of fact can rest "a firm belief or conviction as to the truth of the allegations sought to be established." It must be "so clear, direct and weighty[,] and convincing as to enable either a judge or jury to come to a clear conviction, without hesitancy, of the truth of the precise facts at issue."
>
> [<u>In Re Registrant J.G.</u>, 169 N.J. 304, 330-31 (2001) (first quoting <u>In re Purrazzella</u>, 134 N.J. 228, 240 (1993); and then quoting <u>In Re Registrant R.F.</u>, 317 N.J. Super. 379, 384 (App. Div. 1998)).]

The facts before us show clear and convincing evidence that Royal violated the conditions of his parole. Indeed, the crimes committed in 1996 resulted in a conviction for all but one of the charged crimes and a life sentence. The Board should only revoke parole for serious and persistent violations of parole. N.J.A.C. 10A:71-7.12(a)(1); <u>see also</u> <u>Hobson v. State Parole Bd.</u>, 435 N.J. Super. 377, 391 (App. Div. 2014) ("Absent [a] conviction of a crime, the Board has [revocation] authority only if the parolee 'has seriously or persistently violated the conditions of his parole.'" (quoting N.J.S.A. 30:4-123.60)).

9

Further, the Board must determine "[w]hether [the] revocation of parole is desirable." N.J.A.C. 10A:71-7.12(c)(2).

The record adequately supports the Board's determination that Royal seriously violated the terms of his parole and that revocation is desirable. In December 1996, the Board determined revocation was not desirable at that time. Royal was given a second chance when his parole was again effective on January 31, 1997. Notwithstanding the second chance at parole supervision, Royal admitted that he committed a serious parole violation in August 1996.

Royal argues for the first time on appeal that his further incarceration would not serve the best interests of society. We decline to consider this argument on appeal because it was never presented to the Board.

"It is a well-settled principle that our appellate courts will decline to consider questions or issues not properly presented . . . when an opportunity for such a presentation is available 'unless the questions so raised on appeal go to jurisdiction of the trial court or concern matters of great public interest.'" Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973); see also, N.J.A.C. 10A:72-14.2(c) and ZRB, LLC v. N.J. Dep't of Env't. Prot., 403 N.J. Super. 531, 536 n.1 (App. Div. 2008) (citing Nieder, 62 N.J. at 234). Here, there is neither a question of "jurisdiction" nor a "great public interest." Nieder, 62 N.J. at 234.

Having considered the record in light of the applicable legal principles, we affirm the revocation of parole for the reasons expressed in the Board's decision.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2680-21