**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0220-22

JAMES OFELDT,

     Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

     Respondent.

_____

Submitted May 1, 2024 – Decided March 6, 2025

Before Judges Gummer and Walcott-Henderson.

On appeal from the New Jersey Department of Corrections.

James Ofeldt, appellant pro se.

Matthew J. Platkin, Attorney General, attorney for respondent (Janet Greenberg Cohen, Assistant Attorney General, of counsel; Dorothy M. Rodriguez, Deputy Attorney General, on the brief).

The opinion of the court was delivered by

GUMMER, J.A.D.

James Ofeldt, an inmate at the New Jersey State Prison, appeals from a final agency decision issued by respondent New Jersey Department of Corrections (DOC) upholding findings of guilt and sanctions imposed for, among other violations, attempting to escape detention and tampering with or blocking locking devices. Ofeldt contends the record lacked substantial evidence he had committed those prohibited acts. We disagree and affirm.

I.

As set forth in a DOC "Unusual Incident Report," a DOC officer reported that while "returning from the shower" to his cell on March 7, 2022, Ofeldt "pulled away from escort officers," "began kicking the tier gate in an attempt to exit the area[,] and was manipulating his handcuffs." The officer also reported Ofeldt possessed a razor and had used it "to damage the handcuffs and belt and removed one of his hands." According to the officer, after Ofeldt continued to "attempt [to] free himself from the remaining handcuff" and failed to follow "several orders to stop manipulating his handcuffs and to report to the tier gate to be secured," the officer "deployed O.C. spray in an attempt to maintain safety, security and control of the tier but [Ofeldt] continued to attempt to manipulate his handcuffs." The officer stated that after an extraction team reported to the scene, Ofeldt "complied with orders to report to the gate where he was

handcuffed by the extraction team." He was taken to a unit for "decontamination but refused." He was subsequently placed in a cell without further incident.

Officers also described the incident in separate disciplinary reports. In one report, an officer stated Ofeldt was "manipulating his handcuffs setting himself free of them and kicking the tier gate i[n] an aggressive manner several times in an attempt to exit the tier." Another officer stated Ofeldt "refused to be secured and returned to his cell" and had been "observed trashing the tier; while holding a blade and cutting the belt to which he was secured . . . and becoming uncuffed." That officer also reported Ofeldt had been given and refused "several orders to comply" and that Ofeldt "was out on tier, cut security belt, became un-cuffed, and refused to lock in."

Another officer stated when Ofeldt "was on the tier with cuffs and a belt," he "started tampering with the cuffs and he cut the belt with [a] razor" and was then "able to free one hand from the cuffs." That officer reported in a Special Custody Report that Ofeldt was "cuffed," "walked out of the shower and was upset about [the] tier being flooded," threw "trash down the steps[,] walked to the other side of the tier," and "had a razor." Another officer completed a separate Special Custody Report and confirmed "an inmate flooded out on the

tier" and stated Ofeldt "kick[ed] open the shower door before we could belt him" and "grabbed trash and threw it down the stairs."

On the same day the incident occurred, Ofeldt was charged with the following prohibited acts: *.102 (attempting or planning escape), in violation of N.J.A.C. 10A:4-4.1(a)(1)(xiii); *.154 (tampering with or blocking any locking device), in violation of N.J.A.C. 10A:4-4.1(a)(2)(xii); two counts of *.256 (refusing to obey an order of any staff member), in violation of N.J.A.C. 10A:4-4.1(a)(2)(xvii); *.306 (conduct which disrupts or interferes with the security or orderly running of the correctional facility), in violation of N.J.A.C. 10A:4-4.1(a)(2)(xix); and *.651 (being unsanitary or untidy), in violation of N.J.A.C. 10A:4-4.1(a)(5)(xiii). "Prohibited acts preceded by an asterisk (*) are considered the most serious and result in the most severe sanctions." N.J.A.C. 10A:4-4.1(a) (citation omitted).

Ofeldt was served with copies of the disciplinary reports containing the charges on March 8, 2022. Ofeldt requested and was afforded the assistance of a counsel substitute. He pleaded not guilty to the charges for *.102 (attempting or planning escape), *.256 (refusing to obey an order of any staff member), and *.306 (conduct which disrupts or interferes with the security or orderly running of the correctional facility). He pleaded guilty to the charges for *.154

(tampering with or blocking any locking device) and *.651 (being unsanitary or untidy).

A hearing was scheduled to take place on March 11, 2022, but was adjourned to March 18, 2022, to allow more time for preparation of closing statements. In support of the charges, the DOC submitted staff reports and video footage. At the hearing, Ofeldt made several statements. He explained he "was freaking out" because his "property got ruined," apparently referencing another inmate's flooding of the tier. He admitted he "took the belt off, yes" and threw the trash down the stairs but denied he "cut anything" or was "given any orders."

During the hearing, Ofeldt's counsel substitute argued "[k]icking the door is not an attempt to escape" and asserted the video of the incident did not support the charges and Ofeldt "never refused a direct order." In a written closing statement, the counsel substitute argued the *.102 (attempting or planning escape) charge should be dismissed because the video of the incident did not support it. The counsel substitute asserted Ofeldt did not "break open, or intend to open, the gate to leave the unit." The counsel substitute acknowledged the video showed Ofeldt "kicking the gate one time" but argued kicking the gate was not "proof he was intending to escape or move himself from the top tier to the lower tier."

A-0220-22

As memorialized in the Adjudication of Disciplinary Charge (ADC) documents for each charge, Ofeldt was offered but declined the opportunity to call other witnesses on his behalf or cross-examine any adverse witnesses at the hearing. His counsel substitute acknowledged the information provided on the ADC documents accurately reflected what had taken place at the disciplinary hearing.

The disciplinary hearing officer (DHO) found Ofeldt guilty of each charge. The DHO determined "[t]he evidence support[ed] that [Ofeldt] attempted to escape by kicking door/gate to open it; however[,] the lock couldn't be broke[n]. [Ofeldt] then proceeded to take off cuffs and belt to further facilitate attempting to leave the area." The DHO also found the evidence "support[ed] that [Ofeldt had] refused several direct orders to comply" and had engaged in disruptive behavior. Regarding the *.154 (tampering with or blocking any locking device) charge, the DHO noted Ofeldt had pleaded guilty to the charge, "admitted to taking belt/cuffs off," and "gave excuses for his actions." Finding Ofeldt had taken "no resp[onsibility] for his behavior" and "need[ed] to consider the safety [and] security of others," the DHO issued the following sanctions: two hundred days in a "restorative housing" unit and a loss

6

of two hundred days of commutation time and thirty days of recreational, canteen, phone, and other privileges.

Ofeldt's counsel substitute administratively appealed the decision. He argued, among other things, the evidence did not support the charges, the record was devoid of proof Ofeldt intended to escape; Ofeldt had been deprived of his right to cross-examine witnesses; the DHO had denied Ofeldt's request to rewind the video and prevented him from watching the entire video, denied his request to take a polygraph test, and "refused to hear any explanation why he was behaving the way he did"; and the sanctions were illegal.

On April 6, 2022, an assistant superintendent upheld the March 18, 2022 decision, finding "[t]he officer observed you removing one of your hands from handcuffs and attempting to remove the other. Your actions present a risk to the safe and secure operation of the institution. The sanction provided was proportionate to the offense. No leniency will be afforded to you."

This appeal followed. In his merits brief, Ofeldt expressly limits his appeal to "two claims." First, he argues the record did not contain substantial, credible evidence of an attempt to escape. Second, contending "removing his hand from a locked handcuff does not constitute tampering with a locking

A-0220-22

device," he asserts the record contained no physical evidence he had tampered with a locking device.

## II.

"The scope of our review of an agency decision is limited." Mejia v. N.J. Dep't of Corr., 446 N.J. Super. 369, 376 (App. Div. 2016). In reviewing an agency decision, we determine "(1) whether [it] conforms with relevant law; (2) whether [it] is supported by substantial credible evidence in the record; and (3) whether, in applying the law to the facts, the administrative agency clearly erred in reaching its conclusion." Conley v. N.J. Dep't of Corr., 452 N.J. Super. 605, 613 (App. Div. 2018). "We will disturb an agency's adjudicatory decision only upon a finding that the decision is 'arbitrary, capricious or unreasonable,' or is unsupported 'by substantial credible evidence in the record as a whole.'" Blanchard v. N.J. Dep't of Corr., 461 N.J. Super. 231, 237-38 (App. Div. 2019) (quoting Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980)). The challenger of the agency decision bears the burden of proving the decision was "arbitrary, unreasonable or capricious." In re M.M., 463 N.J. Super. 128, 136 (App. Div. 2020) (quoting McGowan v. N.J. State Parole Bd., 347 N.J. Super. 544, 563 (App. Div. 2002)). We are not bound by an agency's statutory

A-0220-22

interpretation or other legal determinations and review those de novo. Conley, 452 N.J. Super. at 613.

In an appeal from a final DOC decision in a prisoner disciplinary matter, we consider whether the record contains substantial evidence to support the decision the inmate committed the prohibited act. Blanchard, 461 N.J. Super. at 237-38; see also N.J.A.C. 10A:4-9.15(a) ("finding of guilt at a disciplinary hearing shall be based upon substantial evidence"). "Substantial evidence has been defined alternatively as 'such evidence as a reasonable mind might accept as adequate to support a conclusion,' and 'evidence furnishing a reasonable basis for the agency's action.'" Blanchard, 461 N.J. Super. at 238 (quoting Figueroa v. N.J. Dep't of Corr., 414 N.J. Super. 186, 192 (App. Div. 2010)).

When reviewing a prison disciplinary matter, we also consider whether the Department followed the regulations adopted to afford inmates procedural due process. See McDonald v. Pinchak, 139 N.J. 188, 194-95 (1995); Jacobs v. Stephens, 139 N.J. 212, 220-22 (1995). "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due [to] a defendant in such proceedings does not apply." Jenkins v. Fauver, 108 N.J. 239, 248-49 (1987). The inmate's more limited procedural rights, initially set forth in Avant v. Clifford, 67 N.J. 496, 525-46 (1975), are codified in a comprehensive set of

9

regulations. N.J.A.C. 10A:4-9.1 to -9.28. Those regulations "strike the proper balance between the security concerns of the prison, the need for swift and fair discipline, and the due-process rights of the inmates." Williams v. Dep't of Corr., 330 N.J. Super. 197, 203 (App. Div. 2000).

Applying these principles, we are satisfied the record contains sufficient evidence to support the finding of guilt on the \*.102 (attempting or planning escape) charge. Under our Criminal Code, a person commits the offense of "escape" when "without lawful authority [he] removes himself from official detention or fails to return to official detention following temporary leave granted for a specific purpose or limited period." N.J.S.A. 2C:29-5(a); see also State v. Lawrence, 463 N.J. Super. 518, 524 (App. Div. 2020) (finding N.J.S.A. 2C:29-5(a)'s definition of escape applies in criminal not civil contexts). "'Official detention' means arrest, detention in any facility for custody of persons under charge or conviction of a crime or offense, . . . or any other detention for law enforcement purposes." N.J.S.A. 2C:29-5(a).

Ofeldt argues he was charged with attempted escape "for kicking a locked gate [that] . . . did not lead to the outside; it simply confined [him] to a certain section of the housing unit." He "admits he removed the handcuffs and belt" and contends those acts "do[] not constitute an attempt to escape." But they do.

"[E]ven if further major steps are required before a crime can be completed, or the accused had ample opportunity to desist prior to completing the crime, a [factfinder] can still conclude that an attempt has been committed." State v. Fornino, 223 N.J Super. 531, 540 (App. Div. 1988). Moreover, although Ofeldt may not have been attempting to escape from the prison grounds, the evidence – his admissions, the video footage, and the reports of DOC officers that he had "pulled away from escort officers," kicked the gate "in an attempt to exit the area," failed to follow "several orders to stop manipulating his handcuffs," and "refused to be secured and returned to his cell" – supports the conclusion he was at a minimum attempting to escape his "detention for law enforcement purposes" from the shower area to his cell.

That substantial evidence also supported the finding of guilt on the *.154 (tampering with or blocking any locking device) charge. Ofeldt denies he used a razor to cut the belt that restrained him but admits he freed himself from both locking devices, slipping his hand out of the cuffs and removing the belt. That admission, plus the video footage and officer reports, constitute sufficient evidence to support the conclusion he tampered with both locking devices.

We are equally satisfied Ofeldt received all the procedural due process to which he was entitled. Although in his merits brief he expressly limits his appeal

11

to the two arguments we have addressed and rejected, Ofeldt references some purported due-process violations. For example, he asserts the DOC deprived him of his due process-rights by preventing him and his counsel substitute from conducting "meaningful review" of the video footage of the incident and from "confronting" one of the DOC officers who had issued a report. Ofeldt, however, does not dispute the video footage was presented as evidence at the hearing and does not articulate how a "meaningful review" would have altered the outcome. He also does not dispute his counsel substitute acknowledged in writing that the information provided on the ADC documents – including that Ofeldt had been offered but declined the opportunity to cross-examine any adverse witness – accurately reflected what had taken place at the disciplinary hearing. We do not perceive any due-process deprivation under those circumstances or in connection with any of the other purported violations Ofeldt references.

We do not specifically address the findings of guilt on the remaining charges because Ofeldt did not expressly challenge those findings on appeal. See In re Gloria T. Mann Revocable Tr., 468 N.J. Super. 160, 180 (App. Div. 2021) (deeming issue waived when party failed "to adequately brief" it); see also

Pressler & Verniero, <u>Current N.J. Court Rules</u>, cmt. 5 on <u>R.</u> 2:6-2 (2025) ("[A]n issue not briefed is deemed waived.").

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hasley

Clerk of the Appellate Division